## A11A1843. ROSE v. THE STATE.
(722 SE2d 898)

MIKELL, Presiding Judge.

After a jury trial, Victor Rose was convicted of one count of child molestation and one count of statutory rape of J. W. Rose was sentenced to serve 20 years in confinement based on the merged counts. On appeal, Rose argues that the trial court erred in finding, after a *Jackson-Denno*[1] hearing, that incriminating statements he made to police on videotape were freely and voluntarily made. Discerning no error, we affirm.

"On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict."[2] So viewed, the evidence shows that during July or August 2007, Rose, who was 32, had sex with his girlfriend's 12-year-old daughter, J. W., who became pregnant. DNA testing from buccal swabs of both Rose and J. W., as well as testing of fetal tissue obtained when J. W. had an abortion, showed a 99.9 percent probability that Rose was the father of J. W.'s unborn child. When J. W.'s mother learned that her daughter was pregnant, on September 4, 2007, she called the police. Law enforcement officers were dispatched to J. W.'s home and drove Rose, J. W., her mother, and J. W.'s two minor siblings to the Douglas County Sheriff's Department because Rose and J. W.'s family lacked other means of transport. No one was under arrest at the time.

Investigator Trent Wilson interviewed Rose at the sheriff's office and audio and video of the interview were recorded on a DVD. Wilson testified at the *Jackson-Denno* hearing, and the DVD shows, that Wilson told Rose he was not under arrest. In the DVD recording of the interview, after Wilson explained that he wanted to interview Rose because of the allegations that Rose had had sex with J. W., Rose immediately volunteered this information: "I was drunk. I was laid out. When I came through ... [J. W.] was on me with her ... blanket and she didn't have no clothes on, so I pushed her off of me." Wilson interrupted Rose, saying, "hold on" because "you done

---

[1] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[2] (Footnote omitted.) *Burdette v. State*, 251 Ga. App. 30 (553 SE2d 340) (2001).

already said some stuff that incriminates you." Wilson then read Rose his rights pursuant to *Miranda v. Arizona*.[3] When Wilson asked Rose if he understood his rights, Rose said, "Yeah." However, Rose did not sign a *Miranda* waiver form, and a few moments later said he did not understand part of the form. Rose asked Wilson, "Would you use this stuff to incriminate me?" Wilson responded, "This is your right to say . . . I don't have to talk to you, okay, without a lawyer. . . . What this says is, I'm willing to talk to you without a lawyer to explain myself." Wilson also told Rose that if at any time Rose told him "I don't want to talk to you no more, I need a lawyer," Wilson would "leave [Rose] alone." Rose did not ask for a lawyer, and in response to questions, Rose told Wilson that J. W. took his penis out, that she "bounced" on him three times, and that he pushed her off of him. Wilson asked Rose if the baby would be his, and Rose responded, "I guess it's going to be mine."

During the interview, Wilson's gun was not drawn and Rose was not handcuffed. Rose also indicated that he could read, and read parts of the waiver form aloud. The interview lasted approximately an hour.

At the end of the interview, Wilson told Rose he would be booked and charged with child molestation. At the *Jackson-Denno* hearing prior to Rose's trial, the trial court found that Rose was appropriately advised of his *Miranda* rights and that his statements to law enforcement were "freely, voluntarily, and knowingly made."

Rose, in his sole enumeration, argues that "[t]he trial court erroneously found Appellant Rose's statement to police to have been freely and voluntarily made." Rose argues that his statements were not freely and voluntarily made because the investigator did not answer questions Rose asked about whether his statements would be used against him; however, the DVD shows that when the investigator read Rose his *Miranda* rights, the investigator used the appropriate *Miranda* language, in pertinent part: "Anything you say can and will be used against you in a court of law." Rose also argues that his statements were not freely and voluntarily made because the investigator, rather than Rose, initiated further conversation. Rose further argues that those statements should not have been admitted into evidence because he did not knowingly waive his right against self-incrimination.

> Under Georgia law, only voluntary incriminating statements are admissible against the accused at trial. When not made freely and voluntarily, a confession is presumed to be

---

[3] 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

legally false and cannot be the underlying basis of a conviction. *To make a confession admissible, it must have been made voluntarily, i.e., without being induced by another by the slightest hope of benefit or the remotest fear of injury.* The State bears the burden of demonstrating voluntariness of a confession by a preponderance of the evidence, and unless clearly erroneous, a trial court's factual and credibility determinations related to the admissibility of a confession will be upheld on appeal.[4]

Rose does not allege, nor does the DVD of his interview with police or the investigator's testimony at the *Jackson-Denno* hearing indicate, that Rose's confession was in any way induced by the hope of benefit or fear of injury.

While the investigator did not directly respond to Rose's questions about whether statements Rose made to police would be used against him, the investigator was not required to do so. "[A]n interrogating officer has no duty (or authority) to advise a suspect of the consequences of a particular admission; nor does the officer have an obligation under *Miranda v. Arizona* . . . to advise a suspect against custodial interrogation without a lawyer."[5] It is sufficient if the interrogating officer fully advises the suspect of the specific rights and options prescribed in *Miranda v. Arizona*[6] before questioning, allowing the suspect to select the options independently without "coercion, trickery or device of any kind."[7]

Rose's enumeration also asserts error in the investigator's continued questioning of Rose after Rose asked whether his statement would be used against him. Specifically, Rose asked the investigator, "You ain't gonna hold it against me or nothing like that, right?" The investigator responded, "Did you have sex with the girl?" While an officer must stop questioning a suspect if a suspect has asserted his right to the assistance of counsel or indicated his wish to remain silent,[8] Rose did neither, so his assertion of error fails.[9] Further, even after the investigator stopped Rose from speak-

---

[4] (Punctuation and footnote omitted; emphasis supplied.) *Brewer v. State*, 312 Ga. App. 397, 398 (718 SE2d 612) (2011); OCGA § 24-3-50.

[5] (Citations omitted.) *Williams v. State*, 214 Ga. App. 423, 424 (447 SE2d 716) (1994).

[6] Supra.

[7] *Williams*, supra.

[8] *Miranda*, supra at 444-445.

[9] While Rose never asserts that he requested counsel, his appellate brief references an exchange in which he asked the investigator what he would do regarding the waiver form. The investigator responded, "If it was me and I didn't do nothing . . . then I would sign it. . . . But if I did something and I needed to worry about it, and I feel like I don't know how to answer the question or whatever, and I know I done something wrong, I might ask for my lawyer."

ing, told him he had made incriminating statements already, and read him his *Miranda* rights, Rose continued to respond to questions. "A suspect's failure to appreciate incriminating elements in a statement has little bearing on the knowing, intelligent and voluntary nature of the suspect's waiver of the right to remain silent and the right to an attorney."[10]

Nor did the trial court err in admitting Rose's statements. While it is true that *"if the accused invoked his right to counsel*, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked[,]"[11] because Rose never invoked his right to counsel, these protections do not adhere.

Finally, although Rose never signed the *Miranda* waiver form, we have held that "[t]he refusal to sign a waiver of rights form before speaking to police does not render the statements involuntary and inadmissible. . . . The refusal to sign a waiver form does not constitute an invocation of the right to remain silent or the right to counsel."[12] Further, if a person makes a statement to police after *Miranda* warnings are given and without invoking his right to remain silent or his right to an attorney, he "has in effect waived his rights."[13]

Given the evidence and the investigator's testimony, the trial court was not required to conclude that Rose's statements to the investigator were anything other than freely and voluntarily given. Nor can we say that the trial court's decision to allow Rose's statements into evidence was clearly erroneous. Further, if there had been any error in the admission of Rose's statements, it was harmless given the overwhelming evidence of his guilt and the fact that his testimony at trial was consistent with his interview statements.[14]

*Judgment affirmed. Dillard and Boggs, JJ., concur.*

DECIDED FEBRUARY 9, 2012.

---

Neither the question nor the circumstances surrounding it suggest a request for an attorney. See *Crawford v. State*, 288 Ga. 425, 428 (2) (c) (704 SE2d 772) (2011).

[10] (Citation omitted.) *Williams*, supra.

[11] (Emphasis supplied.) *Byrd v. State*, 261 Ga. 202, 203 (2) (403 SE2d 38) (1991), citing *Smith v. Illinois*, 469 U. S. 91 (105 SC 490, 83 LE2d 488) (1984).

[12] (Citation omitted.) *Aldridge v. State*, 258 Ga. 75, 76 (3) (365 SE2d 111) (1988) (overruled on other grounds by *Hayes v. State*, 261 Ga. 439, 447-448 (1) (405 SE2d 660) (1991) (Benham, J., concurring specially)).

[13] Id.

[14] See *Robinson v. State*, 272 Ga. 752, 755 (5) (533 SE2d 718) (2000); *Pruitt v. State*, 176 Ga. App. 317, 320 (3) (335 SE2d 724) (1985).

*Mary Erickson*, for appellant.
*David McDade, District Attorney, James A. Dooley, Ryan R. Leonard, Assistant District Attorneys*, for appellee.