**SECOND DIVISION
ANDREWS, P. J.,
MILLER, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 2, 2016**

# In the Court of Appeals of Georgia

A15A1686. NOLLEY v. THE STATE.

ANDREWS, Presiding Judge.

Darnell C. Nolley was found guilty by a jury of criminal attempt to commit armed robbery (count 1); aggravated assault (count 2); seventeen violations of the Street Gang Terrorism and Prevention Act (the Street Gang Act) (counts 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, and 19); possession of a firearm during the commission of the felony offense of criminal attempt to commit armed robbery (count 20); possession of a firearm during the commission of the felony offense of aggravated assault (count 21); and misdemeanor obstruction of a police officer (count 22). By merger with other counts, the trial court subsequently vacated the convictions on counts 2, 4, 6, 10, and 21. On appeal, Nolley contends: (1) that the evidence was insufficient to support his convictions for violation of the Street Gang Act on the

remaining counts 3, 5, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, and 19; and (2) that the trial court erred by failing to merge all of the remaining counts charging violation of the Street Gang Act into count 11. We find the evidence was sufficient to support the convictions on all the counts except count 18, on which there was an absence of evidence in the record to prove venue. The trial court did not err by failing to merge all of the Street Gang Act counts into count 11. We conclude for other reasons that counts 8, 9 and 11 must also be vacated and the case remanded for resentencing.

1. The indictment charged that Nolley violated various provisions of the Street Gang Act (OCGA § 16-15-1 et seq.). Specifically, Nolley was charged with violation of subsections (a), (b), (d), and (e) of OCGA § 16-15-4.

Subsection (a) of OCGA § 16-15-4 provides:

> It shall be unlawful for any person employed by or associated with a criminal street gang to conduct or participate in criminal gang activity through the commission of any offense enumerated in paragraph (1) of Code Section 16-15-3.

Counts 3 and 5 charged that Nolley violated subsection (a) by being associated with the Gangster Disciples, a criminal street gang, and participating in criminal gang activity by commission of the offense of criminal attempt to commit armed robbery by pointing a gun at David Hammond, an act which constituted a substantial step

2

toward the commission of armed robbery (count 3), and by commission of the offense of possession of a firearm during the commission of the felony offense of criminal attempt to commit armed robbery (count 5). [1]

Subsection (b) of OCGA § 16-15-4 provides:

(b) It shall be unlawful for any person to commit any offense enumerated in paragraph (1) of Code Section 16-15-3 with the intent to obtain or earn membership or maintain or increase his or her status or position in a criminal street gang.

Counts 7, 8, and 9 charged that Nolley violated subsection (b) by being associated with the Gangster Disciples, a criminal street gang, and committing the offense of criminal attempt to commit armed robbery with the intent to increase his status in the gang (count 7); committing the offense of aggravated assault with the intent to increase his status in the gang (count 8); and committing the offense of criminal

---

[1] It is undisputed that the predicate offenses listed in OCGA § 16-15-3 (1) include the charged offenses of criminal attempt to commit armed robbery, aggravated assault, and both possession of a firearm offenses. Paragraph (1) (J) of OCGA § 16-15-3 provides: "(1) 'Criminal gang activity' means the commission, attempted commission, conspiracy to commit, or solicitation, coercion, or intimidation of another person to commit any of the following offenses on or after July 1, 2006: . . . (J) Any criminal offense in the State of Georgia, any other state, or the United States that involves violence, possession of a weapon, or use of a weapon, whether designated as a felony or not, and regardless of the maximum sentence that could be imposed or actually was imposed."

3

attempt to commit armed robbery with the intent to maintain his status in the gang (count 9).

> Subsection (d) of OCGA § 16-15-4 provides:

> (d) It shall be unlawful for any person who occupies a position of organizer, supervisory position, or any other position of management or leadership with regard to a criminal street gang to engage in, directly or indirectly, or conspire to engage in criminal gang activity.

Count 11 charged that Nolley violated subsection (d) by being in the position of organizer of the Gangster Disciples, a criminal street gang, and directly engaging in criminal gang activity, to wit: "the shooting of David Hammond."

> Subsection (e) of OCGA § 16-15-4 provides:

> (e) It shall be unlawful for any person to cause, encourage, solicit, recruit, or coerce another to become a member or associate of a criminal street gang, to participate in a criminal street gang, or to conduct or participate in criminal gang activity.

Counts 12, 13, 14, 15, 16, 17, 18, and 19 charged that Nolley violated subsection (e) in that, on or about March 30, 2011 (the date of the attempted armed robbery), he encouraged the following persons to participate in criminal gang activity: Rodricus Walton (count 12); Nicolas Thomas (count 13); Ralpheal Thomas (count 14); Christopher Thomas (count 15); Elijah Shuller (count 16); China Fields (count 17); Quintan Reaves (count 18); and Robert Phillips (count 19).

4

Construed in favor of the guilty verdicts, the evidence produced by the State to support these charges showed the following:

Nolley was a high-ranking leader and organizer of a criminal street gang known as the Gangster Disciples (the gang), which made money from prostitution, blackmail, and the sale of illegal drugs and guns.[2] On March 30, 2011, Nolley met with co-defendants, Fields, Walton, Nicolas Thomas, Ralpheal Thomas, Christopher Thomas, Shuller, and Phillips, and set forth a plan to rob Hammond. Of that group, Nolley, Walton, Nicolas Thomas, Ralpheal Thomas, and Shuller were members of the gang. Although Fields denied it, there was evidence that she was engaged in prostitution at Nolley's direction. Fields testified that she had been having sex for money with Hammond. Hammond testified that he had been paying Fields for sex, and admitted that he was also engaged in the business of selling marijuana. Evidence showed that Nolley knew Hammond was having sex with Fields; that Nolley was angry because Hammond owed him money for the sex; and that Nolley directed the plan to rob Hammond to "get respect," take over Hammond's marijuana territory, and

_____

[2] It is undisputed that evidence showed the Gangster Disciples is a "criminal street gang," defined in OCGA § 16-15-3 (2) as "any organization, association, or group of three or more persons associated in fact, whether formal or informal, which engages in criminal gang activity as defined in [OCGA § 16-15-3 (1)]."

show him who was boss. In planning the robbery, Nolley referred to some of the older members of the group as "real niggers in training . . . to be over the younger guys." The co-defendants and Nolley traveled in two cars to Hammond's house. Nolley planned that, if the robbery went awry and police responded, one car could decoy the police while he escaped in the other car. On the way to Hammond's house, Phillips and Nicolas Thomas stopped at Nolley's direction and bought bullets for a handgun to be used in the robbery. Nolley also stopped on the way and met with co-defendant, Quintan Reaves, another member of the gang. Nolley exchanged a gang handshake with Reaves, and Reaves gave Nolley the handgun that Nicolas Thomas subsequently used in the attempted robbery. Text messages that Reaves exchanged with Nolley to arrange the gun pickup contained gang-related symbols. When Nolley and the co-defendants arrived at Hammond's house, at Nolley's direction Fields lured Hammond outside the house, where Nolley, Walton, and Nicolas Thomas (who all had handguns) attempted to rob Hammond at gunpoint. When Hammond resisted, Nolley and Walton fired multiple shots wounding Hammond in the leg. Hammond escaped and immediately reported the attempted robbery and shooting to police. Nolley and the co-defendants fled in their cars. Police responded to the report and chased and stopped the car occupied by Nolley, Walton, Shuller, and Fields. Nolley and Walton

6

escaped on foot, but Shuller and Fields were arrested at the stop. Evidence showed that, by driving the car occupied by Nolley, Shuller was supposed to get an increase in rank in the gang. A gang-related bandana was found in the car. Police investigation led to the subsequent arrest of Nolley and the remaining co-defendants. The State also produced testimony from a Georgia Bureau of Investigation agent qualified as an expert in criminal street gangs and gang-related culture, trends, and customs. The agent testified that gang culture is all about getting and keeping respect, and responding forcefully to disrespect, both internally with other gang members and externally with those not in the gang. The agent confirmed that common sources of gang income include prostitution and drug sales conducted in territory where the gang operates. Most of the co-defendants pled guilty and testified at the trial against Nolley.

Nolley does not dispute that the evidence was sufficient to support his conviction on the charged offenses of criminal attempt to commit armed robbery against Hammond (count 1) and possession of a firearm during the commission of the attempted armed robbery (count 20); that, at the time of those offenses, he was associated with the Gangster Disciples, a "criminal street gang" as defined in OCGA § 16-15-3 (2); and that those offenses are predicate acts of "criminal gang activity"

7

as defined in OCGA § 16-15-3 (1). Rather, Nolley contends the State failed to prove the charged violations of the Street Crime Act because the evidence was insufficient to show that he committed a predicate offense with an intent to further the interests of the gang (OCGA § 16-15-4 (a)); to maintain or increase his status in the gang (OCGA § 16-15-4 (b)); or to show that he did so as an organizer of the gang (OCGA § 16-15-4 (d)).

Proof that "the commission of the predicate act was intended to further the interests of the [gang]" is essential to prove a violation of OCGA § 16-15-4 (a). *Jones v. State*, 292 Ga. 656, 659 (740 SE2d 590) (2013); *Rodriguez v. State*, 284 Ga. 803, 807 (671 SE2d 497) (2009) ("there must be some nexus between the act and an intent to further street gang activity.") We find the evidence was sufficient to establish a nexus between the predicate act and the intent necessary to prove the counts alleging violations of OCGA § 16-15-4 (a), (b), and (d). As set forth above, Nolley and most of the co-defendants involved in the attempted armed robbery of Hammond were associated with the gang; the gang was involved in prostitution and drugs sales; and gang culture centered around enforcing respect for gang members and activities in the gang's territory. Nolley perceived disrespect from Hammond over dealings with Nolley's prostitute, and Nolley planned the robbery to get respect from Hammond and

8

to take over Hammond's drug territory. There was evidence that Nolley, who was a high-ranking gang leader and organizer, saw the robbery as an opportunity to train or promote gang members. There was also evidence that connected the planning and execution of the attempted armed robbery to a gang-related handshake, gang symbols in a text message, and use of a gang-related bandana.

The evidence was sufficient to establish that Nolley: (a) committed the predicate acts with the intent to further the interests of the gang and was guilty of violating OCGA § 16-15-4 (a) as charged in counts 3 and 5; (b) committed the predicate acts with the intent to maintain or increase his status in the gang and was guilty of violating OCGA § 16-15-4 (b) as charged in counts 7, 8, and 9; and (c) was an organizer of the gang directly engaged in criminal gang activity and was guilty of violating OCGA § 16-15-4 (d) as charged in count 11. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

As to his convictions for violation of OCGA § 16-15-4 (e), Nolley contends that, even if there was sufficient evidence to show a nexus between his commission of the predicate acts and his intent to further the interests of the gang, the State failed to prove that, on or about March 30, 2011, he encouraged the following persons to participate in criminal gang activity: Ralpheal Thomas (count 14); Christopher

9

Thomas (count 15); Shuller (count 16); Reaves (count 18); and Phillips (count 19). The evidence showed that Nolley met with co-defendants, including Ralpheal Thomas, Christopher Thomas, Shuller, and Phillips, to plan the attempted armed robbery of Hammond, and that, prior to the attempted robbery, he contacted Reaves by cell phone to arrange to get the gun from Reaves which was subsequently used in the attempted robbery. This evidence, along with evidence establishing Nolley's violation of OCGA § 16-15-4 (a), (b) and (d), was sufficient to show that Nolley was guilty of encouraging others to participate in criminal gang activity as charged in counts 14, 15, 16, 18, and 19. Nevertheless, the conviction as to Reaves on count 18 must be reversed because the State failed to prove venue in Walton County. As the State concedes, Nolley personally obtained the gun from Reaves at a location outside of Walton County, and there is no evidence that any cell phone contact between Nolley and Reaves to arrange the gun exchange occurred in Walton County.

2. Nolley contends that the prohibition against double jeopardy requires that all of his convictions for violations of the Street Gang Act in counts 3, 5, 7, 8, 9, 12, 13, 14, 15, 16, 17, 18, and 19 merge into the conviction on count 11 under which he was found guilty of violating OCGA § 16-15-4 (d) of the Street Gang Act by being an organizer of the gang who directly engaged in criminal gang activity, to wit: "the

10

shooting of David Hammond." The substantive protection afforded under constitutional and statutory double jeopardy provisions prohibits multiple criminal convictions or punishments arising from the same conduct if one crime is included in the other. *Drinkard v. Walker*, 281 Ga. 211, 212 (636 SE2d 530) (2006); U.S. Const. amend. V; Ga. Const. of 1983, Art. I, Sec. I, Par. XVIII; OCGA §§ 16-1-6 (1); 16-1-7 (a). *Drinkard* adopted the "required evidence" test to determine when one crime is "included in" and merges into another – "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 281 Ga. at 215. The test focuses on the evidence required to establish the statutory elements of each criminal offense, not the actual evidence presented at trial. Applying the *Drinkard* test, Nolley contends, for example, that counts 3 and 11 arose from the same transaction, and that count 3, which charged he was associated with the gang and participated in gang activity by attempted armed robbery of Hammond, was established by proof of the same or less than all the facts required to prove count 11, which charged that he was a gang organizer who participated in the same gang activity by shooting Hammond during the attempted armed robbery. Although the State concedes that *Drinkard*

11

would require merger of count 3 into count 11, we find no basis to apply the *Drinkard* test to Nolley's contention that all the Street Gang Act convictions merge into count 11.

As set forth in division 1, supra, these counts charged Nolley with separate criminal violations of the Street Gang Act set forth in subsections (a), (b), (d), and (e) of OCGA § 16-15-4. Subsection (m) of OCGA § 16-15-4 provides: "Any crime committed in violation of this Code section shall be considered a separate offense." Under the plain language of this provision, the Legislature determined that any crime committed in violation of OCGA § 16-15-4 is a separate offense which does not merge with another separate offense under the code section or with any predicate offense listed in the code section. The Legislature has the power to authorize multiple criminal convictions or punishments arising out of the same act or transaction. *Mathis v. State*, 273 Ga. 508, 509 (543 SE2d 712) (2001). Because the Legislature has the power to define crimes and fix punishments, the protection against double jeopardy is limited to assuring that the court does not "exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U. S. 161, 165 (97 SCt 2221, 53 LE2d 187) (1977). Legislative intent to exercise this power in

OCGA § 16-15-4 (m) of the Street Gang Act is expressed in OCGA § 16-15-2 (b) and (c) of the Act which provides:

> The General Assembly . . . finds that the State of Georgia is in a state of crisis which has been caused by violent criminal street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods. These activities, both individually and collectively, present a clear and present danger to public order and safety and are not constitutionally protected. . . . It is the intent of the General Assembly in enacting this chapter to seek the eradication of criminal activity by criminal street gangs by focusing upon criminal gang activity and upon the organized nature of criminal street gangs which together are the chief source of terror created by criminal street gangs.

Accordingly, the *Drinkard* test does not apply to Nolley's multiple convictions for violations of distinct criminal offenses set forth in OCGA § 16-15-4 (a), (b), (d), and (e).

Nevertheless, we find that the trial court should have vacated Nolley's convictions and sentences on counts 8, 9, and 11.

The trial court properly concluded that the conviction on count 2, which charged Nolley with aggravated assault by shooting Hammond during the attempted armed robbery, was vacated by operation of law because it merged into the attempted armed robbery conviction (count 1). *Reed v. State*, 318 Ga. App. 412, 415 (734 SE2d 113) (2012). After merging and vacating the aggravated assault conviction, the trial

13

court also vacated the convictions on counts 4, 6, and 10, which charged violations of the Street Gang Act predicated on commission of the vacated aggravated assault. See *King v. Waters*, 278 Ga. 122 (598 SE2d 476) (2004). The trial court also vacated the conviction on count 21, which charged Nolley with possession of a handgun during commission of the vacated aggravated assault. Id. But count 8 (charging Nolley committed aggravated assault with the intent to increase his status in the gang) and count 11 (charging that Nolley was a gang organizer who directly engaged in criminal gang activity by shooting Hammond) also charged violations of the Street Gang Act predicated on commission of the vacated aggravated assault. Accordingly, we vacate Nolley's convictions and sentences on counts 8 and 11, and remand the case to the trial court for resentencing. Id.

Nolley was convicted on counts 7 and 9 for violation of OCGA § 16-15-4 (b), which provides:

> It shall be unlawful for any person to commit any offense enumerated in paragraph (1) of Code Section 16-15-3 with the intent to obtain or earn membership or maintain or increase his or her status or position in a criminal street gang.

Count 7 charged that Nolley, a gang member, violated subsection (b) by committing the offense of attempted armed robbery with the intent to increase his status in the

gang, and count 9 charged that Nolley, a gang member, violated subsection (b) by committing the offense of attempted armed robbery to maintain his status in the gang. We conclude that the portion of subsection (b) making it unlawful for any person to commit an offense enumerated in OCGA § 16-15-3 (1) with the intent to "maintain or increase his or her status or position in a criminal street gang" expresses the Legislature's intention to create a single crime, committed by a person already a member or associated with the gang, which is proved by showing the person committed the enumerated offense with the intent to maintain or increase status or position in the gang. "When a defendant is convicted for multiple violations of a single statutory provision, the required evidence test enunciated in *Drinkard* [,supra,] does not apply. . . ." *Gipson v. State*, 332 Ga. App. 309, 320, n. 7 (772 SE2d 402) (2015) (punctuation and citation omitted). Rather, to determine whether multiple convictions and punishments are permissible in this context, a court must determine the " 'unit of prosecution,' or the precise act or conduct that is being criminalized under the statute." *State v. Marlowe*, 277 Ga. 383, 383-384 (589 SE2d 69) (2003); compare *Thomas v. State*, 292 Ga. 429, 434 (738 SE2d 571) (2013) (applying *Drinkard* required evidence test to determine whether two distinct criminal offenses merge). We find no statutory basis to conclude that the Legislature intended that

15

proof of intent to "maintain" status or position in the gang would constitute a separate "unit of prosecution" from proof of intent to "increase" status or position in the gang. The State's indictment charging violation of one offense in two counts (counts 7 and 9) was multiplicitous, and resulted in Nolley being punished twice for a single offense in violation of double jeopardy protections. *Chancey v. State*, 256 Ga. 415, 433 (349 SE2d 717) (1986); see *Martin v. State*, 189 Ga. App. 483, 496-497 (376 SE2d 888) (1988) (multiplicitous indictment and multiple punishments in violation of double jeopardy may be addressed and set aside even if not raised on appeal). Accordingly, we affirm Nolley's conviction and sentence on count 7; vacate the conviction and sentence on count 9; and remand the case to the trial court for resentencing.

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded for resentencing. Miller, P. J., and Mercier, J., concur*.

16