**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 20, 2019**

# In the Court of Appeals of Georgia

A19A0527. LOPEZ v. THE STATE

COOMER, Judge.

Following a jury trial, Johannes Lopez was convicted of twenty-seven charges: four counts of aggravated assault, two counts of possession of a firearm during the commission of a felony, three counts of possession of a firearm by a convicted felon, criminal damage to property in the first degree, and seventeen counts of violation of the street gang terrorism and prevention act ("Street Gang Act"). On appeal, Lopez raises 10 enumerations of error. Because the trial court abused is discretion in excluding Lopez's expert witness testimony, we reverse his convictions for violating the Street Gang Act. We affirm his other convictions.

On appeal from a criminal conviction, we view the evidence in a light most favorable to the verdict. *Whaley v. State*, 337 Ga. App. 50, 50 (785 SE2d 685) (2016).

The State's charges against Lopez arose from two separate incidents, which both occurred in the early morning hours on September 15, 2013.

In the first incident, the victims were driving a red Chevy Cavalier. While the victims were stopped at a red light, a white Ford Explorer rammed them from behind and kept going. The victims followed the Explorer and obtained its tag number. They continued to follow the Explorer into a parking lot of a business. One of the victims testified that two people then jumped out of the Explorer and started shooting at them. Surveillance footage from the business was consistent with the victim's account. The victims called 911 and drove to a police station. Based on the tag number, police determined that the Explorer belonged to Lopez's mother.

About 30 minutes later, and in the same area, a red Nissan Altima passed a white Ford Explorer that was driving slowly. A passenger in the Altima noticed that the Explorer had turned its headlights off. Just after that, people inside the Explorer fired gunshots at the Altima. The occupants of the Altima called 911.

Cobb County police responded to the 911 call and found a white Ford Explorer with a tag number matching the one reported from the first incident. Officers stopped the vehicle and found Lopez driving the car with no passengers. Initially, Lopez refused to comply with the officer's demands and was uncooperative and defiant. He

ultimately obeyed the directive to exit the vehicle, although he was simultaneously reaching for a nine-millimeter pistol in his waistband. Eventually, he lay on the ground, and police were able to approach and detain him.

At trial, the State presented several experts who discussed the culture and activities of the criminal street gang, SUR-13, as well as Lopez's affiliation with the gang. The trial court, however, granted the State's motion in limine to exclude the testimony of Lopez's gang expert.

The charges resulting from these two shootings – four counts of aggravated assault, three firearm related charges, and one count of criminal damage to property in the first degree – formed the predicate acts ("predicate acts") underlying the Street Gang Act counts. In total, Lopez was charged with four counts of aggravated assault, two counts of possession of a firearm during the commission of a felony, three counts of possession of a firearm by a convicted felon, criminal damage to property in the first degree, and seventeen counts of violation of the Street Gang Act. He was convicted of all charges except one of the Street Gang Act counts. Lopez timely filed a motion for new trial, which the trial court denied. This appeal followed.

1. Lopez argues that the trial court abused its discretion by granting the State's motion in limine to exclude the testimony of his gang expert. We agree and therefore reverse Lopez's convictions for violating the Street Gang Act.

Whether to admit or exclude expert testimony is reviewed for abuse of discretion. *Thomas v. State*, 290 Ga. 653, 658 (5) (723 SE2d 885) (2012).

During trial, the State presented multiple experts who testified about Lopez's membership in SUR-13 and that the predicate acts were committed to further SUR-13's interests. To counter this evidence, Lopez attempted to qualify and present his own expert on gang activity and culture.

The witness Lopez attempted to present is a current Georgia attorney who is also a former gang member. He testified during voir dire that he was familiar with gang activities inside and outside of jail, and that he was knowledgeable on gang tattoos, symbols, and terminology. At one point, he was employed by the DeKalb County District Attorney's office where he investigated and prosecuted multiple gang cases, including some involving SUR-13. After his DeKalb County employment ended, he continued consulting with multiple district attorney's offices and participating in public outreach programs, including serving on the Atlanta City Gang

4

Council. He also testified that he was familiar with the indictment and factual allegations of this particular case.

The State argues that the defense expert was properly excluded primarily for two reasons. First, he should not have qualified as an expert because he had no formal training, education, or academic background relating to gangs. Second, his testimony would have provided limited relevance because to the extent he qualified as an expert, it would have been as to gang culture generally; he would not have been a bonafide expert on SUR-13.

The bases advanced by the State for exclusion of this testimony are legally untenable. The standard for qualifying an expert does not require any specific formal training or academic background. *Burgess v. State*, 292 Ga. 821, 822 (2) (742 SE2d 464) (2013) ("A witness need not be formally educated in the field at issue to be qualified as an expert."); *Williams v. State*, 279 Ga. 731, 732 (2) (620 SE2d 816) (2005) ("To qualify as an expert generally all that is required is that a person must have been educated in a particular skill or profession; his special knowledge may be derived from experience as well as study. Formal education in the subject at hand is not a prerequisite for expert status." (Citation and punctuation omitted)). *See also Kimbrough v. State*, 215 Ga. App. 303, 304 (1) (450 SE2d 457) (1994) ("[T]he 'street

5

value' of drugs is more peculiarly in the ken of an officer working on the street or buying drugs incognito, and such an officer is more likely to be knowledgeable on that subject than a laboratory chemist who has no actual experience in the purchase of drugs on the street".); *Correa v. Cruisers, a Div. of KCS Int., Inc.*, 298 F3d 13, 25-26 (1st Cir. 2002) (even though witness did not have formal education in the design and operation of marine engines, his twenty years of experience working on and repairing a variety of such engines qualified his expertise). Here, the defense expert's personal experience with gangs, familiarity with their culture and symbols, and professional prosecutorial experience should have allowed him to testify as an expert in this case. Any perceived weaknesses in his qualifications should not have disqualified him as an expert but were matters of weight and credibility for the jury in evaluating his testimony.

The State also maintains that if the witness had been permitted to testify, he only would have been able to discuss the customs and culture of the specific gang he belonged to in Florida in the 1970s, and therefore his testimony would have little to no relevance here. His testimony, however, would not have been so restricted.

The defense attempted to qualify its witness as an expert in gang activities, symbols, and membership, not as an expert on SUR-13. The law permits expert

6

testimony on gang culture and activities generally, and based on the witness's qualifications, he should have been able to testify on that subject. *See Nolley v. State*, 335 Ga. App. 539, 543 (1) (782 SE2d 446) (2016) (where defendant was alleged to be a member of the Gangster Disciples, the State qualified a witness from the GBI as an expert in "criminal street gangs and gang-related culture, trends, and customs.").

Moreover, the trial court entered a pretrial order stating that "expert testimony on gangs, their history, activities and culture, including those of the alleged gang in this case, shall be admissible at the trial of this case." The State presented at least one expert on gang culture generally, and admitted pictures and videos of gang members unrelated to SUR-13. The defense likewise should have been able to present its own expert on criminal street gangs.

Lopez's inability to present his own expert on gang activity was prejudicial to his defense and requires reversal. The State's experts testified, *inter alia*, that the predicate acts were committed in furtherance of SUR-13. The basis of their opinions was that the crimes were committed in public and emanated from hostility towards red – the color of SUR-13's rival gang.

Lopez's expert was prepared to testify that in his opinion, these acts were not done in furtherance of gang activity. He opined that gang members typically do not

7

attack unsuspecting strangers, that they usually only engage in violence with known rival gang members, and that shooting at random is actually against the code of the streets and could actually diminish one's reputation within their gang. Additionally, Lopez's expert would have testified that although the crimes were committed in public, a gang would likely have wanted them to be carried out in a more visible manner. The fact that these shootings were committed in the cover of darkness at 1:30 a.m. with very few cars and people around likely means that they were not gang-motivated.

The trial court's exclusion of this testimony deprived Lopez of the opportunity to refute the State's experts. In closing, Lopez argued in part that the offenses were not done in furtherance of gang activity. However, he had no testimony from trial that he could rely on to support his argument. The jury had only heard from the State's experts who came to the opposite conclusion. Because Lopez was unable to present his full defense to combat the State's evidence against him, we must reverse his convictions for violation of the Street Gang Act. *See Maryland v. Craig*, 497 U. S. 836, 845 (110 SCt 3157, 111 LE2d 666) (1990) ("The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary

8

proceeding before the trier of fact. The word 'confront,' after all, also means a clashing of forces or ideas, thus carrying with it the notion of adversariness."); *Terry v. State*, 308 Ga. App. 424, 426 (707 SE2d 623) (2011) ("The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." (citation omitted)).

Based on our holding in this Division, we need not address Lopez's other enumerations pertaining to his Street Gang Act counts. We will now address his remaining enumerations that he argues affords him relief on his other convictions.

2. Lopez contends that the State presented insufficient evidence to sustain his convictions for violation of the Street Gang Act as well as his convictions of the predicate acts relating to the second shooting. We disagree.

On appellate review of the sufficiency of the evidence, the relevant question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Smith v. State*, 246 Ga. App. 191, 192 (1) (539 SE2d 881) (2000).

9

Lopez argues that the State failed to prove his identity in connection with the second shooting. However, ample circumstantial evidence connected Lopez to that shooting.

The evidence presented against Lopez as to the second shooting included two witnesses who testified that someone in a white Ford Explorer opened fire on their car. Furthermore, they each indicated that a photograph depicting Lopez's Explorer was similar in style to the one they encountered that night. The State presented a video of the first shooting, which showed Lopez driving the Explorer. Both shootings involved the same white Ford Explorer. Lopez was pulled over while driving that white Ford Explorer and admitted to police that he had been driving that car in the area earlier that morning. This evidence was sufficient for the jury to conclude that Lopez committed the second shooting.

Next, Lopez contends that the State failed to prove that he committed the predicate acts in order to further the interests of SUR-13, a known criminal street gang. To prove that Lopez violated the Street Gang Act, the State was required to show: (1) that he was, in fact, associated with a criminal gang, (2) that he committed a predicate act of criminal gang activity, and (3) that the commission of the predicate

10

act was intended to further the interests of the criminal gang. *Zamudio v. State*, 332 Ga. App. 37, 39-40 (2) (771 SE2d 733) (2015).

At trial, the State's experts discussed SUR-13 gang membership and its culture. Specifically, as to Lopez, multiple witnesses spoke about Lopez's known membership in the gang based on his prior interactions with law enforcement. Lopez had multiple tattoos indicating he was a member of SUR-13, and even conceded his membership during closing argument.

As to SUR-13 generally, the State's experts testified that SUR-13 is prevalent in the area where the shootings occurred. They have a rivalry with the Norteños 14 gang, whose color is red. Consequently, SUR-13 members are very antagonistic to red, and may act violently towards a person wearing red or driving a red car – regardless of whether they are affiliated with Norteños 14. They also testified that public displays of gang force and violence, like the incidents here, are part of SUR-13's culture. *See Alston v. State*, 329 Ga. App. 44, 47 (1) (763 SE2d 504) (2014) (finding a sufficient nexus for gang activity where a State expert testified "that the gang's reputation is furthered by committing highly visible crimes in a manner which allows the witnesses and the victims to discern that a particular gang committed the crime.")

11

The expert testimony presented by the State allowed the jury to find beyond a reasonable doubt that Lopez was a member of SUR-13, and that the predicate acts were committed to further the interests of the gang.

3. The State presented extensive evidence of Lopez's past criminal conduct, ranging from 2004 through 2015. In related enumerations, Lopez argues that each of these prior acts should have been excluded under OCGA § 24-4-404 (b). He further asserts that regardless of any error in admission, he is entitled to a new trial because the probative value of the prior acts was substantially outweighed by the danger of unfair prejudice. We disagree.

"Admission of evidence is a matter committed to the sound discretion of the trial court, and the trial court's evidentiary decisions will not be disturbed on appeal absent an abuse of discretion." *Scruggs v. State*, 253 Ga. App. 136, 136 (1) (558 SE2d 731) (2001) (footnote omitted).

Despite Lopez's argument, OCGA § 24-4-404 (b) did not apply to the admission of his prior acts. At the time of his trial, OCGA § 16-15-9 and OCGA § 16-15-3 governed the admission of prior acts in Street Gang Act cases. As Lopez acknowledges in his brief, OCGA § 16-15-9 provided that

> For the purpose of proving the existence of a criminal street gang and criminal gang activity, the commission, adjudication, or conviction of any offense enumerated in paragraph (1) of Code Section 16-15-3 [listing several crimes of violence] by any member or associate of a criminal street gang shall be admissible in any trial or proceeding.

Therefore, the commission of offenses listed in OCGA § 16-15-3 (1) were subject to admission if they were committed by any member or associate of a criminal street gang.

Each of Lopez's prior acts in this case met the standard for admission under OCGA § 16-15-9 and OCGA § 16-15-3. As to each prior act, the State presented evidence it was committed by Lopez while he was a member of SUR-13. The State also presented either an expert or a police officer who explained that the prior offenses reflected the behaviors of SUR-13. We therefore find no error in the admission of Lopez's prior acts.

Lopez also argues specifically that his juvenile adjudication should not have been admitted into evidence. However, Lopez conceded at trial that he opened the door to the admission of the adjudication, and even insisted that he would place a copy of it into the record. *See Harper v. Hurlock*, 281 Ga. App. 265, 266 (635 SE2d 874) (2006) ("Self-induced error furnishes no ground for reversal.").

The final argument Lopez makes pertaining to his prior acts is that they should have been excluded under OCGA § 24-4-403 because their probative value was substantially outweighed by their prejudicial effect. We are not persuaded. The "application of the Rule 403 balancing test is a matter committed principally to the discretion of the trial courts, but as we have explained before, the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly." *Morris v. State*, 340 Ga. App. 295, 306 (4) (797 SE2d 207) (2017) (citation and punctuation omitted).

Here, the prior acts should not have been excluded under OCGA § 24-4-403. Because the State charged Lopez under the Street Gang Act, it was required to prove the existence of SUR-13 as well as Lopez's affiliation with it. Lopez's prior acts, which showed he was involved in criminal gang activity, pertained directly to elements of the charged offense. Accordingly, the probative value was not substantially outweighed by the danger of unfair prejudice. Moreover, our appellate courts have repeatedly approved the admission of prior acts that show a defendant is involved in a criminal street gang. *See e.g. Anthony v. State*, 303 Ga. 399, 412 (12) (811 SE2d 399) (2018); *Lang v. State*, 344 Ga. App. 623, 627 (2) (d) (812 SE2d 16) (2018).

4. Lopez asserts that the State violated his right to remain silent in several different ways. He cites to nine instances at trial that he characterizes as either the State eliciting testimony about his silence in the face of police questioning, or his failure to produce evidence of his innocence. He also cites five instances during the State's closing argument that he claims were improper comments on his silence. In addition to these claims, he argues that a Security Threat Assessment document that the Department of Corrections required him to fill out was improperly admitted. Finally, he argues that his custodial statement to police should have been excluded because the State presented insufficient evidence to prove that he was given his *Miranda*[1] warnings. For the reasons shown below, these arguments fail.

*Trial testimony and closing argument*

In his brief, Lopez points to a total of 14 instances from the trial record where he maintains the State violated his right to remain silent. Some of these instances occurred during the presentation of evidence, and others occurred during closing argument. However, Lopez failed to object to any of these instances. His complaints are therefore not preserved for our review. *Williams v. State*, 300 Ga. 218, 222 (3) (794 SE2d 157) (2016).

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

15

Lopez argues in the alternative that his counsel's failure to object to these instances constituted ineffective assistance. This argument likewise is not preserved for our review. At his motion for new trial hearing, Lopez asked his trial counsel in very broad terms about whether he would lodge an objection if he heard evidence that amounted to an improper comment on his client's right to remain silent. Trial counsel responded that he generally would object to such evidence, but in certain cases, there could be a strategic reason for not objecting. Lopez did not ask trial counsel about any specific instance from the trial transcript, and his reasoning for failing to object. In his brief to this Court, Lopez asserts that trial counsel rendered ineffective assistance based on his lack of objections, but makes no earnest legal argument that these failures satisfy the two-pronged *Strickland* analysis. *See generally Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LEd2d 674) (1984). By failing to question his trial counsel with any specificity, and by failing to support his argument to this Court with legal citations, Lopez has not made the requisite showings to establish that his trial counsel provided ineffective assistance. *See Bostic v. State*, 341 Ga. App. 402, 405 (1) (801 SE2d 89) (2017).

*Security Threat Assessment*

At trial, the State introduced a questionnaire the Department of Corrections put forth to Lopez when he was incarcerated for another offense in 2010. The questions were apparently designed to evaluate if Lopez posed a threat in prison based on any gang affiliation. Lopez argues this was inadmissible because at the time he completed the questionnaire, he was in custody and had not been apprised of his *Miranda* warnings.

Pretermitting whether the court erred in admitting this document, we conclude that Lopez has not shown that he was prejudiced by its admission. The document contained 24 questions relating to whether Lopez was affiliated with any gang or its ongoing activities. Of those 24 questions, Lopez only affirmatively answered three. His responses to those three questions indicated that he did join SUR-13 at school when he was 13 years old, and that he joined because he "likes trouble." His answers to the remaining questions were mostly one word responses such as "nothing," or "can't say". A plethora of other evidence in the record established that Lopez was a SUR-13 member and had been in prior legal trouble. Accordingly, even if the court erred here, it was harmless.

17

## Custodial Statement

Lopez argues that the trial court erred in failing to suppress his video recorded interview with police following his arrest because the State presented insufficient evidence to prove that he was given *Miranda* warnings.

> In deciding the admissibility of a statement during a Jackson–Denno hearing, the trial court must consider the totality of the circumstances and must determine the admissibility of the statement under the preponderance of the evidence standard. Unless the factual and credibility findings of the trial court are clearly erroneous, the trial court's decision on admissibility will be upheld on appeal.

*Dasher v. State*, 229 Ga. App. 41, 43 (2) (494 SE2d 192) (1997) (citation and punctuation omitted).

Specifically, Lopez contends that the trial court should have suppressed the video of his recorded interview with police because it did not show the detective informing him of his *Miranda* rights. In addition, Lopez did not sign the waiver of rights form.

Both at the Jackson-Denno hearing and at trial, a Cobb County detective testified that he read Lopez his *Miranda* rights and reviewed a waiver of rights form with him. The detective further testified that Lopez understood these rights and was

18

not laboring under the influence of any drugs or alcohol. The detective further testified that he provided no promises or hope of benefit to Lopez. Although Lopez did not sign the waiver form, he initialed in several places indicating that the form was read to him and that he understood his rights. He then agreed to proceed with the interview.

Lopez's arguments for suppression are misplaced. The record suggests that Lopez's failure to sign the form was an oversight rather than a calculated refusal. Even if he had intentionally refused to sign the waiver, we have held that "the refusal to sign a waiver of rights form before speaking to police does not render the statements involuntary and inadmissible." *Rose v. State*, 314 Ga. App. 79, 82 (722 SE2d 898) (2012) (citation and punctuation omitted). Moreover, Lopez's statement was not suppressable simply because the detective's admonition of the *Miranda* warnings to him were not captured on video. *See Butler v. State*, 292 Ga. 400, 404 (2) (738 SE2d 74) (2013). He has therefore failed to show error in the admission of his statement.

5. In his last enumeration that does not solely pertain to the Street Gang Act counts, Lopez argues that the State engaged in prosecutorial misconduct. According to Lopez, the State "blatantly misused" his prior act evidence by

arguing to the jury that he had the propensity to commit crimes. However, Lopez waived this argument by failing to raise it below. *See Cook v. State*, 232 Ga. App. 796, 798 (2) (503 SE2d 40) (1998); *Johnson v. State*, 258 Ga. 856, 858 (6) (376 SE2d 356) (1989).

*Judgment affirmed in part and reversed in part. Doyle, P. J., and Markle, J., concur.*