**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**May 1, 2023**

# In the Court of Appeals of Georgia

A23A0091. SALAAM v. THE STATE.

LAND, Judge.

On appeal from his convictions for armed robbery and gang activity, Ishmael Salaam asserts that the evidence was insufficient. We disagree, but also conclude that one of the gang activity counts merges into another. We therefore vacate Salaam's conviction and remand for resentencing.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Thus viewed in favor of the verdict, the record shows that in July 2017, Bruce Chambers and Dylan Grant, members of the 64 Brims gang, planned a "lick on a plug," meaning a robbery of a marijuana dealer. Chambers and Grant believed their target to be a member of the Piru Bloods, an offshoot of the national Bloods gang. According to gang protocol, Chambers and others needed the permission of their leader Salaam, whom they knew as "G5" or "Big Homie," before conducting any crime against another gang member. Members were also expected to share crime proceeds with their leader. Salaam and others dressed in the dark red colors of the gang, which used violence to keep its members in line.

In the days before July 31, 2017, Chambers, Grant, and Isis McCloud met with Salaam at his house to obtain permission for the robbery. After receiving that permission, Chambers texted Grant: "[W]e gotta handle on shit for 5 too. We gone get bread." On July 31, 2017, as planned, McCloud drove the two men to the victim's address and acted as lookout while Chambers and Grant entered the victim's home and robbed him, stealing his marijuana, his cellphone and his bookbag, and shooting him as well. Police responded to the scene, pursued a car described by witnesses, and

apprehended Grant and McCloud as they fled on foot after the car crashed. After the robbery, McCloud admitted that she had called and texted Salaam, whom she knew as "G5," hoping that he would pick her up. Chambers' cell phone also showed that he had contacted Salaam under the contact name "5" numerous times before the robbery.

Salaam, Chambers and Grant were arrested and charged with two counts of armed robbery, one count of aggravated assault, and 14 counts of gang activity.[1] After the second armed robbery charge and four of the gang charges were dropped, the jury acquitted Salaam of the aggravated assault and five of the gang charges, but found him guilty of the armed robbery (Count 5) and the remaining five gang charges (Counts 1-4 and 13). Counts 1-4 alleged that the three men had violated the Street Gang Terrorism and Prevention Act (OCGA § 16-15-4) by participating in the armed robbery, by doing so with the intent to maintain their positions in the gang, by acquiring an interest in the victim's marijuana and cell phone through their gang activity, and by conspiring to engage in such activity. Count 13 alleged that Salaam,

---

[1] See OCGA § 16-15-4 (outlawing participation in "criminal gang activity through the commission of" certain enumerated offenses). The same indictment charged Chambers alone with gang activity and possession of a weapon during the commission of a felony and Grant alone with attempting to elude a police officer.

3

Chambers and Grant had participated in gang activity when they acquired an interest in the victim's marijuana and cell phone by means of the aggravated assault alleged in Count 15 (of which Salaam was acquitted). Salaam was convicted and sentenced to life in prison without parole plus 100 years. His motion for new trial was denied.

1. Salaam first argues that the evidence was insufficient to find him guilty of the armed robbery (Count 5) and the various activities associated with the gang (Counts 1 through 4). We disagree.

OCGA § 16-15-4 provides in relevant part:

(a) It shall be unlawful for any person employed by or associated with a criminal street gang to conduct or *participate in criminal gang activity* through the *commission of any offense enumerated* in [OCGA § 16-15-3].[2]

(b) It shall be unlawful for any person to *commit any [such] offense . . . * with the intent to obtain or earn membership or *maintain or increase his or her status* or position in a criminal street gang.

(c) It shall be unlawful for any person to *acquire* or maintain, directly or indirectly, through criminal gang activity or proceeds derived therefrom

---

[2] OCGA § 16-15-3 (1) (J) includes "[a]ny criminal offense in the State of Georgia, . . . that involves violence, possession of a weapon, or use of a weapon, whether designated as a felony or not," as among the predicate offenses for purposes of OCGA § 16-15-4. This category thus includes armed robbery.

*any interest in or control of any real or personal property* of any nature, including money.

(d) It shall be unlawful for any person who occupies a position of organizer, *supervisory position*, or any other position of management or leadership with regard to a criminal street gang to *engage in, directly or indirectly, or conspire to engage* in criminal gang activity.

(Emphasis supplied.)

Counts 1 through 4 of the indictment track this statute when they charge Salaam with participating and maintaining his position in the gang and acquiring an interest in the victim's property, all by means of the armed robbery, as well as engaging in the gang's activity from a supervisory position. OCGA § 16-15-4 (a)-(d). As we have previously held, each of the statutory subsections quoted above, even if arising from the same transaction, "expresses the Legislature's intention to create a single crime, committed by a person already a member or associated with the gang," with the Legislature having "the power to criminalize multiple convictions or punishments arising out of the same transaction." *Nolley v. State*, 335 Ga. App. 539, 547 (2) (782 SE2d 446) (2016); see also *Johnson v. State*, 313 Ga. 155, 159 (4) (868 SE2d 226) (2022) ("the text of the statute itself best reflects the legislative choice of whether a particular course of conduct involves one or more distinct 'offenses' under

5

the statute") (citation and punctuation omitted). In other words, each subsection of OCGA § 16-15-4 provides an individual unit of prosecution, even if the conduct underlying the multiple charges is the same. See *Smith v. State*, 290 Ga. 768, 772-774 (3) (723 SE2d 915) (2012) (the act of fleeing from officers after being given five different signals to stop, "and not just the act of fleeing itself," formed the proper unit of prosecution such that five counts of attempting to elude did not merge, even though all the crimes occurred in a "single episode").

In order to establish that Salaam violated subsection (a) or (b) of this statute, the State was required to prove four elements:

> (1) the existence of a criminal street gang, [as] defined in OCGA § 16-15-3 (2) . . . ; (2) [his] association with the gang; (3) that [he] committed one of the offenses identified in OCGA § 16-15-3 (1); and (4) that the crime was intended to further the interests of the gang.

(Citation and punctuation omitted.) *Boyd v. State*, 306 Ga. 204, 209 (1) (b) (830 SE2d 160) (2019). Counts 1 and 2 could thus be proven by showing that Salaam was a member of the gang and committed the predicate offense of armed robbery with the intent to further the interests of the gang and for the purpose of accomplishing specifically outlawed goals – that is, to participate in the gang (subsection (a)) and to maintain or increase status in it (subsection (b)). The outlawed goals of Counts 3

6

and 4 – that is, to acquire an interest in personal property (subsection (c)), or to engage or conspire concerning a criminal activity while in a supervisory position (subsection (d)) – could be proved in the same way, but without the requirement of a predicate offense.

In this context, as in others, "[c]riminal intent is a question for the jury and may be inferred from conduct before, during and after the commission of the crime." (Citation and punctuation omitted.) *Boyd*, 306 Ga. at 201-211 (1) (b); see also *Morris v. State*, 340 Ga. App. 295, 300-301 (1) (797 SE2d 207) (2017) (applying this concept in the course of concluding that there was sufficient evidence of a defendant's criminal intent to further the interests of a gang). The evidence outlined above was sufficient to show that Salaam was a leader of the gang, authorized the armed robbery, and was responsible for it as well as the specific violations of OCGA § 16-15-4 charged in the first four counts of the indictment against him. *Nolley*, 335 Ga. App. at 543-544 (1) (affirming gang member's conviction for a predicate attempted armed robbery as well as for gang activity under subsections (a), (b) and (d) of the statute); see also *Morris*, 340 Ga. App. at 299 (testimony as to a gang's members, activities, symbols and attire was sufficient to prove the gang's existence and a defendant's membership in it).

2. Salaam also argues that because he was acquitted of the aggravated assault charge that was the predicate offense for Count 13, which charged him with acquiring an interest of the victim's marijuana and cell phone by means of that assault, the evidence was insufficient as to that gang activity offense. We disagree, but we hold that Count 13 merges into Count 3, which charged Salaam with acquiring an interest in the same property by means of armed robbery.

(a) A conviction for aggravated assault will merge into a conviction for armed robbery based on the same course of conduct because aggravated assault is a lesser included offense of armed robbery. See, e.g., *Long v. State*, 287 Ga. 886, 889 (2) (700 SE2d 399) (2010) (merging an aggravated assault conviction into an armed robbery conviction). Here, however, the jury acquitted Salaam of aggravated assault but found him guilty of armed robbery. The first question, then, is whether Salaam's acquittal on the aggravated assault charge that was the predicate for Count 13 – the gang activity charge culminating in "acquiring an interest in [the victim's] marijuana and cell phone" – requires his acquittal on that count.

We answered this question in the negative in *Allen v. State*, 361 Ga. App. 300 (864 SE2d 149) (2021). There also, a defendant asserted on appeal that his acquittal on aggravated assault and firearm charges required his acquittal on the gang charges

8

predicated on them. Id. at 303 (1). Noting that "'[a]n acquittal on one charge does not affect the sufficiency of the evidence as to another charge, even if the conviction is a compound offense, and the acquittal was for a predicate offense,'" and that the jury was charged on the law regarding parties to a crime, we held that there was sufficient evidence before the jury to find that he was a party to an aggravated assault, even though the jury acquitted him of that predicate offense. Id. at 303-304 (1), quoting *Houseworth v. State*, 348 Ga. App. 119, 124 (1) (c) (820 SE2d 231) (2018); see also *Kimble v. State*, 236 Ga. App. 391, 395 (1) (512 SE2d 306) (1999) (although a defendant "is given the benefit of her acquittal on the counts on which she was acquitted," it is "neither irrational nor illogical to require her to accept the burden of conviction on the counts on which the jury convicted.") (citation and punctuation omitted).

Here, likewise, this jury was authorized to conclude that Salaam encouraged other gang members to commit the crime of aggravated assault against the victim, and thus to find him guilty of Count 13, which accused him of acquiring an interest in the victim's marijuana and cell phone by means of an aggravated assault that was part of the gang's activities, even though he was acquitted of the assault itself. *Allen*, 361 Ga. App. at 304 (affirming defendant's conviction for gang activity as a party to the

9

predicate offenses even though he was acquitted of those specific offenses); see also *Daniely v. State*, 309 Ga. App. 123, 124-125 (1) (709 SE2d 274) (2011) (finding evidence sufficient to affirm conviction of possession of a knife during the commission of the felony of aggravated assault, despite the defendant's acquittal as to the predicate offense).

(b) Our analysis does not end here, however, because Salaam's attack on the sufficiency of the evidence prompts the question whether the gang activity charge of Count 13 merges into Count 3, which cast armed robbery rather than aggravated assault as the predicate for acquiring an unlawful interest in the same marijuana and cell phone. See *Dixon v. State*, 302 Ga. 691, 696-697 (4) (808 SE2d 696) (2017) (even when no party raises a merger error, an appellate court has the discretion to correct it on direct appeal "because [it] results in an illegal and void judgment of conviction and sentence"); *Nazario v. State*, 293 Ga. 480, 486-487 (2) (b) (746 SE2d 109) (2013).

"Where, as here, we are presented with the question of whether a single course of conduct can result in multiple convictions and sentences *under the same statute*, the doctrine of substantive double jeopardy is implicated, and the 'unit of prosecution,' or the precise act criminalized by the statute, must be identified."

10

(Citation omitted; emphasis supplied.) *Coates v. State*, 304 Ga. 329, 330 (818 SE2d 622) (2018). When a defendant has been "convicted of multiple counts of the *same* crime, the correct merger analysis requires courts to ask whether those crimes arose from 'a single course of conduct' and, if so, whether the defendant can face multiple convictions and sentences under a unit-of-prosecution analysis." (Citation and punctuation omitted; emphasis in original.) *Johnson v. State*, 313 Ga. 155, 159 (4) (868 SE2d 226) (2022). "Whether offenses merge is a legal question, which an appellate court reviews de novo." (Citation and punctuation omitted.) Id.

Here, Counts 3 and 13 charged Salaam under the same statute (OCGA § 16-15-14) with gang activity accomplishing the same goal (the acquiring of an interest in the victim's marijuana and cell phone) by two different means (armed robbery and aggravated assault) based on the same course of conduct (the use of a gun on the victim). "[B]ecause there is no element of aggravated assault with a deadly weapon that is not contained in armed robbery, that form of aggravated assault will merge into armed robbery if the crimes are part of the same act or transaction." (Citation and punctuation omitted.) *Chambers v. Hall*, 305 Ga. 363, 365 (3) (825 SE2d 162) (2019). Likewise, and because the same conduct here resulted in not only the armed robbery and aggravated assault charges but also the gang activity charges predicated

11

on each of these crimes, Count 13 and Count 3 share a single unit of prosecution – that is, a violation of OCGA § 16-15-4 (c) involving the acquisition of an interest in the victim's personal property. See *Edvalson v. State*, 310 Ga. 7, 10 (849 SE2d 204) (2020) (where a statute prohibited the distribution of "'any visual medium'" of child pornography, that term implied "no specific quantity and had no limit," such that the Court of Appeals erred in not merging numerous counts into one count). Because we thus conclude that Count 13 merges into Count 3, we vacate Salaam's conviction and remand to the trial court for resentencing in accordance with this opinion.

*Judgment vacated and case remanded for resentencing. Barnes, P. J., and Brown, J., concur*.