303 Ga. 525
FINAL COPY

S18A0382. HENDRIX v. THE STATE.

MELTON, Presiding Justice.

Following a jury trial, Darrell Hendrix appeals his convictions for felony murder and related crimes, contending that the evidence was insufficient and that the trial court erred by admitting certain witness testimony pursuant to OCGA § 24-8-804 (b) (5).[1] For the reasons set forth below, we affirm.

---

[1] On February 26, 2014, Hendrix was indicted in Chatham County for malice murder (Count 1); three counts of felony murder (Counts 2-4); nine counts of violation of the Georgia Street Gang Terrorism and Prevention Act (Counts 5, 7, 9, 11, 13, 15, 17, 19, 21); four counts of possession of a firearm during the commission of a felony (Counts 6, 10, 14, 18); two counts of criminal attempt to commit a felony (Counts 8, 12); aggravated assault (Count 16); and possession of a firearm by a first offender probationer (Count 20). The jury found Hendrix guilty of all three counts of felony murder (Counts 2-4); four counts of possession of a firearm during the commission of a felony (Counts 6, 10, 14, 18); two counts of criminal attempt to commit a felony (Counts 8, 12); and aggravated assault (Count 16). The jury acquitted Hendrix of malice murder (Count 1), and of eight counts of violation of the Georgia Street Gang Terrorism and Prevention Act (Counts 5, 7, 9, 11, 13, 15, 17, 19). On September 3, 2014, Hendrix was sentenced to life for felony murder (Count 3); five years consecutive for possession of a firearm during the commission of a felony (Count 6); ten years concurrent for criminal attempt to commit a felony (Count 8); and twenty years consecutive for aggravated assault (Count 16). The two

1. In the light most favorable to the verdicts, the record shows that, on April 24, 2013, Roderick Richardson left home in his car shortly before midnight to go to work in Savannah. On April 25, 2013, at approximately 12:02 a.m., Officer Ruben Colon was dispatched to 52nd and Hopkins Streets. Officer Colon discovered a vehicle that had crashed into the fence of the local elementary school with the engine still revving and passenger door open. Inside the car, Officer Colon observed Richardson slumped over, and blood splattered on the windows. Richardson was taken to the local hospital and pronounced dead. A .38 caliber bullet was recovered from his body, and the medical examiner concluded that Richardson died as a result of one gunshot wound to the head.

On April 27, 2013, Thomasina Hendrix, the appellant's grandmother,

---

additional counts of felony murder were vacated by operation of law. See Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). The trial court merged Counts 10, 14, and 18 into Count 6 and Count 12 into Count 3, and entered an order of nolle prosequi as to Counts 20 and 21. Hendrix filed a motion for new trial on September 5, 2014, and amended it with new counsel on October 13, 2015. On March 30, 2016, the trial court denied Hendrix's motion for new trial as amended. On April 13, 2016, Hendrix filed a notice of appeal, and his case, submitted on the briefs, was docketed to the term of this Court beginning in December 2017.

voluntarily contacted police with information about the murder. On May 6, 2013, Thomasina told Detective Eric Smith that Hendrix had confessed to her that he shot Richardson during a carjacking attempt that went awry. She said that Hendrix was worried that he was in trouble because "he [thought] he killed somebody" around "52nd Street." Hendrix also told Thomasina that he shot Richardson because Richardson tried to rob him after Hendrix approached his car. In a follow-up interview on May 8, 2013, Thomasina informed police that Hendrix was staying with his mother in Jacksonville, Florida.

After learning that Hendrix had been apprehended in Jacksonville on an unrelated matter, Detective Smith traveled to Florida to interview Hendrix. During this interview, Hendrix admitted that he was present at the time that Richardson was shot. Hendrix stated that, on the night in question, he and his friend, James, went out together with the intent of stealing a car. Hendrix initially planned to do the carjacking, but he said that he was afraid and gave his gun, a .38 revolver, to James to do it instead. Hendrix explained that they pushed the crosswalk button in order to get a car to stop at the intersection around Hopkins Street. Richardson stopped at the light, and Hendrix watched James approach him and ask for change for a twenty-dollar bill. Hendrix next

3

heard one gunshot, and, according to Hendrix, James told him that he shot Richardson for refusing to give him the money. Additionally, Hendrix explained that James kept his .38 revolver after the shooting, and, in exchange, gave Hendrix a .22 caliber pistol.[2] Hendrix also admitted to telling Thomasina about Richardson's murder.

This evidence was sufficient to enable the jury to find Hendrix guilty of the crimes for which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Hendrix contends that the trial court erred by admitting into evidence statements made by Thomasina to police pursuant to the forfeiture-by-wrongdoing exception to the rule against hearsay. See OCGA § 24-8-804 (b) (5).[3] We disagree.

A review of the record shows that prior to Hendrix's trial, Thomasina

---

[2] During a search of Thomasina's home, where Hendrix had been living for ten years, police discovered .22 caliber ammunition in Hendrix's bedroom and located a .22 caliber pistol in a back yard shed.

[3] Because this provision of Georgia's new Evidence Code mirrors its counterpart in the Federal Rules of Evidence, Fed. R. Evid. 804 (b) (6),we look to decisions of the federal appellate courts construing and applying the Federal Rules in order to determine the meaning of our own statute. See, e.g., State v. Frost, 297 Ga. 296, 299 (773 SE2d 700) (2015).

became reluctant to testify despite the fact that she had originally reached out to police voluntarily to report Hendrix's crime. Amber Davis, a Chatham County victim witness advocate, visited Thomasina at that time, and Davis testified that Thomasina showed her two envelopes that were addressed to her from Hendrix. The envelopes contained copies of the State's discovery with the word "snitch" written in the margin next to Thomasina's statement to police. The following day, Thomasina called Davis and expressed reluctance to testify against Hendrix, specifically stating that she was fearful for her life. She explained to Davis that, if she said anything further, "they would kill me." Further, Thomasina told a detective that the only way to get her to court would be to arrest her. The State then procured a material witness arrest warrant for Thomasina.

On the morning of Hendrix's trial, Thomasina was taken to an interview room to wait. The interview room, however, was adjacent to a holding cell in which Hendrix was detained, and a glass wall divided the two areas. When he saw his grandmother, Hendrix pounded on the glass and yelled at Thomasina not to say anything more. At that point, there was an attempt to move Thomasina and Hendrix into different rooms, but Thomasina and Hendrix passed in a

hallway. Again, Hendrix, who was irate, screamed at his grandmother and instructed her not to say anything. At that point, Thomasina was visibly shaken, on the verge of crying, and having difficulty holding on to her walking cane.

Thomasina was later called to the witness stand, and, when presented with transcripts of her prior interviews to refresh her recollection, she stated that she did not want to read it and that she did not want to remember what happened. The State then asked that Thomasina's prior statements to police be admitted into testimony pursuant to the forfeiture-by-wrongdoing exception to the rule against hearsay. The trial court granted this request.

OCGA § 24-8-804 (b) (5) provides: "The following [type of statement] shall not be excluded by the hearsay rule if the declarant is unavailable as a witness: . . . A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." "[O]ne who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." Davis v. Washington, 547 U. S. 813, 833 (IV) (126 SCt 2266, 165 LE2d 224) (2006) (excluding forfeiture-by-wrongdoing from Sixth Amendment proscriptions). If, as supported by a preponderance of the evidence, a trial court finds that a party

6

has acted with the purpose of making a witness unavailable to testify against him, a trial court does not abuse its discretion in allowing the unavailable witness's statements to be admissible at trial against the party who caused the witness's absence. See Hickman v. State, 299 Ga. 267 (4) (787 SE2d 700) (2016).[4]

> To admit a statement against a defendant under the rule [of forfeiture-by-wrongdoing], the government must show (1) that the defendant engaged or acquiesced in wrongdoing, (2) that the wrongdoing was intended to procure the declarant's unavailability, and (3) that the wrongdoing did procure the unavailability.

United States v. Scott, 284 F3d 758, 762 (7th Cir. 2002). In this case, all three factors were shown by a preponderance of the evidence. First, Hendrix sent

---

[4] See also OCGA § 24-1-104 (a) ("Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court, subject to [certain limitations not applicable here]. In making its determination, the court shall not be bound by the rules of evidence except those with respect to privileges. Preliminary questions shall be resolved by a preponderance of the evidence standard."); Anglin v. State, 302 Ga. 333, 335 (2) (806 SE2d 573) (2017) ("The admission of evidence is committed to the sound discretion of the trial court, and the trial court's decision whether to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion.") (citation omitted).

correspondence to Thomasina and called her a "snitch," and then he engaged in further wrongdoing by screaming at Thomasina repeatedly not to talk to the State or say anything, to the point that Thomasina began shaking and could barely hold on to her walking cane. Second, that wrongdoing was intended to procure Thomasina's unavailability, as Hendrix directly commanded Thomasina not to cooperate with the State. Finally, a preponderance of the evidence shows that Hendrix's wrongdoing procured Thomasina's unavailability. Shortly after Thomasina received the first note from Hendrix calling her a snitch, she became reluctant to testify and explained to the State that she was afraid "they would kill me." Later, despite the fact that she had initially contacted police of her own accord, she refused to show up for Hendrix's trial and ultimately had to be brought in on an arrest warrant. Then, after being confronted with irate admonitions from Hendrix at the courthouse, Thomasina was visibly shaken, and, when asked about her statements to police on the witness stand, she stated that she did not want to remember them and was uncooperative. See OCGA § 24-8-804 (a) (3) (a declarant is unavailable when she "[t]estifies to a lack of memory of the subject matter of the declarant's statement"). Therefore, a preponderance of the evidence showed that Hendrix engaged in wrongdoing

8

intended to procure Thomasina's unavailabilty, and that wrongdoing did actually cause her unavailability. Concomitantly, the trial court did not abuse its discretion by admitting Thomasina's statements to police under OCGA § 24-8-804 (b) (5).

Moreover, even if the trial court erred, the introduction of Thomasina's statements was harmless. Hendrix admitted to police that he made a plan with James to steal a car at gunpoint on the night in question. He further described his participation in stopping Richardson's car and giving the murder weapon to his companion. Pursuant to these admissions, Hendrix would be guilty of Richardson's murder as a party to a crime. See OCGA § 16-2-20.

Judgment affirmed. All the Justices concur.

Decided April 16, 2018.

Murder. Chatham Superior Court. Before Judge Karpf.

Debra K. Jefferson, for appellant.

Meg E. Heap, District Attorney, Isabel M. Pauley, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General, for appellee.