309 Ga. 875
FINAL COPY

S20A1010. WELCH v. THE STATE.

MELTON, Chief Justice.

Following a June 2017 jury trial, Todd Welch was convicted of murder and other crimes in connection with the shooting death of Christopher Brown and the aggravated assault of Darrell Agee.[1] On

---

[1] The crimes occurred on August 21, 2014. On April 1, 2015, a Clayton County grand jury indicted Welch for the following crimes: malice murder (Count 1), felony murder predicated on possession of a firearm by a convicted felon (Count 2), possession of a firearm by a convicted felon (Count 3), felony murder predicated on aggravated assault (Count 4), five counts of aggravated assault based on shooting Brown in various parts of the body (Counts 5-9), five counts of aggravated assault based on shooting Agee in various parts of the body (Counts 10-14), aggravated assault for shooting at John Mitchell (Count 15), three counts of aggravated battery for rendering useless various parts of Agee's body (Counts 16-18), possession of a firearm during the murder of Brown (Count 19), possession of a firearm during the aggravated assault of Brown (Count 20), possession of a firearm during the aggravated assault of Agee (Count 21), and possession of a firearm during the aggravated assault of Mitchell (Count 22). At the June 26 to 30, 2017 jury trial, Welch was found guilty on all counts except those related to Mitchell (Counts 15 and 22). The trial court sentenced Welch to life without the possibility of parole for malice murder. Although the trial court purported to merge the two felony murder counts into the malice murder conviction, those counts were actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). The trial court also merged the count for possession of a firearm by a convicted felon (Count 3) and all five aggravated assault counts relating to Brown (Counts 5-9) into the malice murder count. The trial court also sentenced Welch to twenty consecutive years for the aggravated assault of Agee (Count 10), fifteen consecutive years for the aggravated battery of Agee

appeal, Welch contends that the trial court erred by improperly admitting hearsay evidence under the forfeiture-by-wrongdoing exception to the rule against hearsay and erred by failing to give his requested jury instruction on grave suspicion. For the reasons that follow, we conclude that the arguments raised by Welch are without merit. However, we also conclude that we must vacate Welch's sentences as to Counts 10 and 20 of his indictment in order to correct sentencing errors that harm him. Accordingly, we affirm in part and vacate in part.

1. Viewed in the light most favorable to the verdicts, the evidence presented at Welch's trial showed the following. On the

(Count 16), and five years for each of the possession counts (Counts 19 and 20 relating to Brown and Count 21 relating to Agee) to be served consecutively to all other counts, but concurrently to each other. The trial court merged the remaining aggravated assault charges relating to Agee into Count 10 for sentencing purposes and merged the remaining aggravated battery charges relating to Agee into Count 16. Welch filed a motion for new trial on July 28, 2017, which he subsequently amended on February 13, 2019. The trial court denied the motion as amended on June 14, 2019. However, as explained more fully in Division 4, infra, the trial court should have merged Welch's conviction on Count 10 into Count 16 for sentencing purposes, and should have merged his conviction on Count 20 into Count 19. Welch timely filed a notice of appeal on June 28, 2019, and the case was docketed to the April 2020 term of this Court and submitted for a decision on the briefs.

night of August 21, 2014, roommates Brown, Agee, and John Mitchell were at their home in Clayton County. Mitchell was outside cleaning up the garage. Cashime McLemore arrived in a truck with Kirsten Forame and parked on the street in front of the house. Forame went into the house while McLemore waited for her outside in his truck.

About five minutes after McLemore dropped off Forame, a black Infiniti SUV pulled up. As Mitchell was closing the garage, he saw two men exit the SUV. Mitchell then went out the back door to feed his dogs. Meanwhile, Agee saw the two men walking up to the house, and he recognized one as Welch, whom he had met on previous occasions. Brown and Welch had both been involved with the same woman, Yakia Lewis, and Brown did not trust Welch, so he handed Agee his 9-millimeter handgun so that Agee could "watch his back."

After Mitchell finished feeding his dogs, he went back in the house. Brown was in the kitchen with Forame, Welch, and Welch's companion. Agee, who was in the living room, watched the

conversation in the kitchen. At a moment when Agee was turned away, he heard someone call out his name. When he turned around, Welch was pointing a gun at him. Welch began shooting, and shots hit Agee multiple times. When Agee fell to the floor, Welch turned and fired shots into the kitchen where Agee had seen Brown sitting moments before.

From his bedroom, Mitchell heard Brown scream "No, no, no, no, no," followed by a series of gunshots. Mitchell jumped out his bedroom window, and, as he was getting up from the ground, he saw Welch and his companion come out the front door. As Mitchell ran toward his neighbor's home, he heard three or four more gunshots.

No one answered the door at the neighbor's house, and Mitchell turned around and saw Welch and his companion jump into the black SUV and leave the scene. Mitchell returned to his house and found Agee lying behind the couch clutching his stomach and screaming at Mitchell to "go find [Brown]." Mitchell found Brown in his room lying face down and clutching his chest. Brown had suffered gunshot wounds to his chest, abdomen, arm, thigh, and

buttocks, and he later died from his injuries.

Forame called 911, and police arrived at the scene. Agee was rushed to the hospital, where he was placed in a medically induced coma for three weeks. Agee ultimately spent over three months in the hospital, undergoing 21 surgeries. His injuries left him with a permanent limp and diminished use of his left hand.

The shell casings at the crime scene and bullets recovered from both the crime scene and the victims' bodies were consistent with having been fired from a Glock .40 pistol, not a 9-millimeter handgun. Mitchell identified Welch in a photographic lineup and at trial as one of the men who was in his kitchen on the night of the crimes, and Agee identified Welch in a photographic lineup and at trial as the man who shot him and who shot in Brown's direction. Additionally, in a phone call to Shawnice Bailey that was recorded while Welch was in jail and awaiting trial, Welch admitted that he was at the home of the victims on the night of the crimes.

Although Welch does not challenge the sufficiency of the evidence in this case, consistent with our customary practice of

reviewing the sufficiency of the evidence in murder cases,[2] we have reviewed the record independently and have concluded that the evidence presented at trial was sufficient to authorize a rational jury to find Welch guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Welch contends that the trial court erred by allowing a police officer to testify, pursuant to the forfeiture-by-wrongdoing exception to the rule against hearsay, that Yakia Lewis told him that she traveled to Florida with Welch in a black Infiniti SUV after the crimes.[3] See OCGA § 24-8-804 (b) (5) ("The following [type of statement] shall not be excluded by the hearsay rule if the declarant is unavailable as a witness: . . . A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to,

---

[2] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, 309 Ga. 385, 392 (4) (846 SE2d 83) (2020). The Court began assigning cases to the December term on August 3, 2020.

[3] Police found Lewis and Welch in Florida, and they arrested Welch there. They also found the black Infiniti SUV in Florida.

and did, procure the unavailability of the declarant as a witness."). We disagree.

The record shows that on April 6, 2017 — the day before Lewis received a subpoena to appear at Welch's upcoming April 17, 2017 trial — Welch called Lewis from jail and said to her, "Don't say s**t. In a couple weeks, don't say s**t." Lewis responded, "I'm gonna be there with you." Lewis did not appear for Welch's trial on April 17, 2017, which was continued until June 2017.

On April 20, 2017, Welch phoned Lewis again. During this call, Welch told Lewis that the trial had been rescheduled for June. He said "everything [was] good," but "they watchin' everything." He instructed Lewis, "All you need to do is just stay down for a couple more months." Lewis replied, "You already know I'm gonna do that." Investigator John Gosart attempted to serve Lewis a subpoena on the Friday before the June 26 trial date, but, at that time, Lewis's house appeared to be abandoned. Investigator Gosart testified that

Lewis's Twitter account activity showed posts indicating that she may have been in Miami or Chicago.

It is well established that

> [o]ne who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation. *Davis v. Washington*, 547 U. S. 813, 833 (IV) (126 SCt 2266, 165 LE2d 224) (2006) (excluding forfeiture-by-wrongdoing from Sixth Amendment proscriptions). If, as supported by a preponderance of the evidence, a trial court finds that a party has acted with the purpose of making a witness unavailable to testify against him, a trial court does not abuse its discretion in allowing the unavailable witness's statements to be admissible at trial against the party who caused the witness's absence. See *Hickman v. State*, 299 Ga. 267 (4) (787 SE2d 700) (2016).

(Punctuation omitted.) *Hendrix v. State*, 303 Ga. 525, 528 (2) (813 SE2d 339) (2018).

There are three factors that the State must show by a preponderance of the evidence in order

> [t]o admit a statement against a defendant under the rule [of forfeiture-by-wrongdoing:] (1) that the defendant engaged or acquiesced in wrongdoing, (2) that the wrongdoing was intended to procure the declarant's unavailability, and (3) that the wrongdoing did procure the unavailability.

(Punctuation omitted.) *Hendrix*, supra, 303 Ga. at 528 (2) (relying

on federal case law and quoting *United States v. Scott*, 284 F3d 758, 762 (7th Cir. 2002)).

Here, the trial court did not abuse its discretion by admitting the hearsay testimony because the State met its burden to allow for the admission of Lewis's statement into evidence. Specifically, the evidence showed contact between Welch and Lewis in which he instructed her not to "say s\*\*t" and in which he showed his intent to procure her absence from his rescheduled June trial by telling her to "stay down for a couple more months." Lewis indicated her assent by confirming that she was "gonna do that" ("stay down") before she left her home and did not appear at Welch's trial. It is clear that Lewis became unavailable as a witness after her conversations with Welch despite the State having subpoenaed her to appear at Welch's April 17 trial and the State's efforts to serve her again just prior to the rescheduled June trial. See OCGA § 24-8-804 (a) (5) ("[T]he term 'unavailable as a witness' includes situations in which the declarant: . . . Is absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance[.]"); *Bolling*

*v. State*, 300 Ga. 694, 699 (2) (a) (797 SE2d 872) (2017) ("[A] witness is unavailable under [OCGA § 24-8-804 (a) (5) where the State has] show[n] that reasonable, good-faith efforts to locate the witness were made."). Under these circumstances, we conclude that the trial court did not abuse its discretion by admitting Lewis's statement to police under OCGA § 24-8-804 (b) (5). See *Hendrix,* supra, 303 Ga. at 529 (2).[4]

Moreover, even if the trial court erred in admitting Lewis's statement that she traveled to Florida in a black Infiniti SUV with Welch, it is highly probable that the admission of this isolated statement did not contribute to the verdict in light of the

---

[4] To the extent that Welch argues that the admission of this evidence violated the Confrontation Clause, such argument is without merit, as, again, "[o]ne who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." (Citation and punctuation omitted.) *Hendrix*, supra, 303 Ga. at 528 (2). Welch's remaining argument concerning the residual hearsay exception also fails because the statement in question was properly admitted under the forfeiture-by-wrongdoing exception.

overwhelming evidence of Welch's guilt. See, e.g., *Tyner v. State*, 305 Ga. 326, 330-331 (3) (825 SE2d 129) (2019).

3. Welch argues that the trial court erred by failing to give his requested jury instruction on "grave suspicion" because Agee did not have a direct view of Brown at the time that Brown was shot, and no other witnesses identified Welch as Brown's shooter.[5] However, Agee provided direct evidence that Welch shot him and then shot in Brown's direction. Moreover, even if Welch's companion was the shooter rather than Welch, Welch could still have been found guilty of Brown's murder as a party to the crime. See OCGA § 16-2-20. In other words, "[t]he trial evidence raised more than a bare suspicion of [Welch's] guilt." *Hodo v. State*, 272 Ga. 272, 275 (6) (528 SE2d 250) (2000). "Furthermore, the trial court gave complete instructions on reasonable doubt and presumption of innocence." *Jenkins v. State*, 281 Ga. 24, 25 (2) (635 SE2d 714) (2006). Accordingly, the trial court did not err by refusing to give Welch's requested charge. See id.;

---

[5] Although Forame was at the scene of the crimes and called 911, she did not testify at Welch's trial, as the State was unable to locate her.

*Hodo*, supra, 272 Ga. at 275 (6).

4. Although Welch does not raise any issues relating to his sentence on appeal, because the trial court erred by failing to merge Welch's aggravated assault sentence for shooting Agee into his aggravated battery sentence for shooting Agee, and because the trial court erred by failing to merge one of Welch's two sentences for possession of a firearm during commission of a crime relating to Brown, we will exercise our discretion to correct the merger errors because the errors harm Welch. See *Dixon v. State*, 302 Ga. 691, 696-697 (4) (808 SE2d 696) (2017).[6]

For Count 10, Welch was convicted of the aggravated assault of Agee, and, for Count 16, Welch was convicted of the aggravated battery of Agee. However, all of the aggravated assault charges and aggravated battery charges relating to Agee were predicated on the

---

[6] We also note that the trial court improperly merged Welch's conviction on Count 3 for possession of a firearm by a convicted felon into his malice murder conviction on Count 1. See *Malcolm*, supra, 263 Ga. at 374 (5) (A conviction for possession of a firearm by a convicted felon does not merge into a malice murder conviction.). But, because the State did not raise the issue by cross-appeal, and because correcting this sentencing error would be to Welch's detriment, we exercise our discretion not to address it. See *Dixon*, supra, 302 Ga. at 698 (4).

same conduct — shooting Agee multiple times in rapid succession. And, as charged in this case, the crimes only differed in the degree of injury or risk of injury suffered by Agee. Thus, the aggravated assault conviction on Count 10 should have merged into the aggravated battery conviction on Count 16 for purposes of sentencing. See *Regent v. State*, 299 Ga. 172, 174-176 (787 SE2d 217) (2016) (aggravated assault count merged into aggravated battery count for sentencing purposes where multiple slashing wounds inflicted in quick succession did not come from separate criminal acts); *Ingram v. State*, 279 Ga. 132, 133-134 (2) (610 SE2d 21) (2005) (where injuries are "part of a continuous criminal act, committed at the same time and place and inspired by the same criminal intent," such injuries comprise "one intentional criminal transaction"). See also OCGA § 16-1-6 (1) (A crime is included in another where "[i]t is established by proof of the same or less than all the facts" required to prove the other crime); § 16-1-6 (2) (A crime is also included in another where "[i]t differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person . . .

suffices to establish its commission.").

Welch was also convicted on two counts of possession of a firearm during the commission of a crime, Counts 19 and 20, relating to *one* victim, Brown.

> [W]here multiple crimes are committed together during the course of one continuous crime spree, a defendant may be convicted *once* for possession of a firearm during the commission of a crime *as to every individual victim* of the crime spree as provided under OCGA § 16-11-106 (b) (1), and additionally once for firearm possession for every crime enumerated in paragraphs (b) (2) through (5).

(Emphasis supplied.) *State v. Marlowe*, 277 Ga. 383, 386 (2) (c) (589 SE2d 69) (2003).

The provisions allowing for additional convictions for the crimes enumerated in OCGA § 16-11-106 (b) (2) through (5) are not at issue in this case.[7] Accordingly, Welch could only be sentenced for

---

[7] OCGA § 16-11-106 (b) provides:

Any person who shall have on or within arm's reach of his or her person a firearm or a knife having a blade of three or more inches in length during the commission of, or the attempt to commit:

(1) Any crime against or involving the person of another;

(2) The unlawful entry into a building or vehicle;

(3) A theft from a building or theft of a vehicle;

(4) Any crime involving the possession, manufacture,

one of the possession counts relating to Brown as an individual victim, and the trial court erred by failing to merge Count 20 (possession in connection with the aggravated assault of Brown) into his conviction for Count 19 (possession in connection with the murder of Brown). See *Bradley v. State*, 292 Ga. 607, 609-610 (1) (b) (740 SE2d 100) (2013).

We therefore vacate the convictions and sentences imposed for Counts 10 and 20.

*Judgment affirmed in part and vacated in part. All the Justices concur, except Warren, J., not participating.*

Decided September 28, 2020.

---

delivery, distribution, dispensing, administering, selling, or possession with intent to distribute any controlled substance or marijuana as provided in Code Section 16-13-30, and counterfeit substance as defined in Code Section 16-13-21, or any noncontrolled substance as provided in Code Section 16-13-30.1; or

   (5) Any crime involving the trafficking of cocaine, marijuana, or illegal drugs as provided in Code Section 16-13-31,

and which crime is a felony, commits a felony and, upon conviction thereof, shall be punished by confinement for a period of five years, such sentence to run consecutively to any other sentence which the person has received.

Murder. Clayton Superior Court. Before Judge Mack.

*Bruce S. Harvey*, for appellant.

*Tasha M. Mosley, District Attorney, Karen S. Barbour, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Kathleen L. McCanless, Assistant Attorney General*, for appellee.