# THIRD DIVISION
## DOYLE, P. J.,
## MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 13, 2023**

# In the Court of Appeals of Georgia

A22A1556. MAHOGANY v. THE STATE.

DOYLE, Presiding Judge.

Robert Jordan Mahogany was convicted of eleven counts of violation of the Georgia Street Gang Terrorism and Prevention Act ("the Gang Act"),[1] four counts of armed robbery,[2] three counts of aggravated assault,[3] first degree home invasion,[4] and two counts of possession of a firearm during the commission of a felony.[5] He appeals the denial of his motion for new trial, challenging the sufficiency of the evidence and

---

[1] OCGA § 16-15-4 (a), (b), (c).

[2] OCGA § 16-8-41 (a).

[3] OCGA § 16-5-21 (a) (2).

[4] OCGA § 16-7-5 (b).

[5] OCGA § 16-11-106 (b) (1)-(2).

arguing that the trial court erred by admitting certain evidence. For the reasons that follow, we affirm.

Viewed in favor of the verdict,[6] the record shows that in the evening of August 16, 2018, Terry Williams was at home playing cards with Reggie Scott, Perez Raiford, and Antonio Brooks when two males entered an exterior door that led into the room where the men were playing. One man was shorter and wore a mask over his face. The other man, later identified as Mahogany, was not wearing a mask, was young and tall with twists in his hair, had his head shaved on the sides, and was brandishing a black handgun. Mahogany pointed the gun at the four men and told them to "give it up," stating "y'all know what it is." The victims emptied their pockets and put their money on the card table, and Mahogany collected it and fled with the other intruder.

Through their collective knowledge, the victims pinpointed Mahogany as the unmasked assailant, and Williams gave Mahogany's name to a detective. Less than

---

[6] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

two weeks after the home invasion, Williams, Scott, and Brooks identified Mahogany as one of the intruders from a photographic lineup.[7]

Mahogany was arrested in October 2018. In a call from jail, Mahogany advised his girlfriend that Brooks told Mahogany's mother that Brooks was not going to appear in court. Mahogany's first trial ended in a mistrial after a prosecution witness inadvertently placed Mahogany's character in issue. In a pretrial hearing before the March 2020 trial, Investigator T. D. testified that he had been unable to locate Brooks, whose mother would not disclose his whereabouts.[8]

At trial, Corporal L. O. of the Houston County Sheriff's Office was qualified as an expert witness in gang activity over Mahogany's objection. L. O. testified that the Bloods are a criminal street gang, and the G-Shine Bloods, a subset of the United Blood Nation, were active and present in Houston County. According to L. O., the Bloods use the letter "B," and wear red. During L. O.'s testimony, the State introduced photos from Mahogany's Facebook page showing him, among other things, wearing red clothing, wearing a red bandana while holding a handgun, and flashing what L. O. testified were Bloods's hand signals. Mahogany's page had posts

---

[7] Williams and Scott later identified Mahogany at trial as one of the assailants.

[8] The investigator was similarly unable to locate Brooks before the first trial.

referencing "the Blood Gang," "It's a Blood World B100, "GShine is that movement," as well as photographs showing persons wearing red clothing and displaying Bloods's gang signs and captioned "Just Boolin," Big B's Only 100," B's BaBy. Videos from Mahogany's Facebook page showed him flashing "B" hand signals, wearing a red bandana, declaring "I'm G-Shine for real, I'm Shine for real," pointing a black gun at the camera, and stating "You know I'm banging too, Blood." L. O. testified that after reviewing the evidence, he surmised that Mahogany was a member or associate of the G-Shine Bloods gang and that Mahogany committed the invasion at Williams' house to instill fear in the community, to maintain and increase his rank and reputation in the gang, and to further the gang's interests.

At the conclusion of the trial, Mahogany was found guilty of eleven counts of violation of the Gang Act, four counts of armed robbery, three counts of aggravated assault, first degree home invasion, and two counts of possession of a firearm during the commission of a felony.[9] The trial court sentenced Mahogany to serve 30 years with the first 20 in prison. Mahogany moved for a new trial, and the trial court denied the motion following a hearing. This appeal followed.

---

[9] The trial court directed a verdict as to an additional count each of aggravated assault and violation of the Gang Act, and the jury found Mahogany not guilty of another count of violation of the Gang Act.

1. *Sufficiency of the evidence*. Mahogany contends that the evidence was insufficient to support his convictions. We disagree.

> When evaluating a challenge to the sufficiency of the evidence, we view all of the evidence admitted at trial in the light most favorable to the prosecution and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. This evaluation essentially addresses whether the government's case was so lacking that it should not have even been submitted to the jury. Our limited review leaves to the jury the resolution of conflicts in the evidence, the weight of the evidence, the credibility of witnesses, and reasonable inferences to be made from basic facts to ultimate facts.[10]

(a) *Aggravated Assault*. OCGA § 16-5-21 (a) (2) provides in relevant part: "A person commits the offense of aggravated assault when he . . . assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."

The testimony of Williams and Scott that Mahogany aimed a gun at the victims, directed them to get into the corner of the room and "give it up," collected

---

[10] (Citations and punctuation omitted.) *McGruder v. State*, 303 Ga. 588, 590 (II) (814 SE2d 293) (2018).

their money, and then fled is sufficient to support his convictions for aggravated assault.[11]

(b) *Armed Robbery*. OCGA § 16-8-41 (a) provides in relevant part: "A person commits the offense of armed robbery when, with intent to commit theft, he . . . takes property of another from the person or the immediate presence of another by use of an offensive weapon. . . ."

The same evidence that supports the aggravated assault convictions supports Mahogany's armed robbery convictions.[12]

(c) *Home Invasion*. Pursuant to OCGA § 16-7-5 (b), "a person commits the offense of home invasion in the first degree when, without authority and with intent to commit a forcible felony therein and while in possession of a deadly weapon . . . he . . . enters the dwelling house of another while [it] is occupied by any person with authority to be present therein."

---

[11] See, e.g., *Veasey v. State*, 322 Ga. App. 591, 574-595 (1) (c) (745 SE2d 802) (2013).

[12] See, e.g., *Kamusoko v. State*, 362 Ga. App. 276, 277-280 (1) (868 SE2d 253) (2022).

Again, Williams's testimony that Mahogany entered his home without permission, pointed a gun at him and the other victims, and took their money is sufficient to support Mahogany's conviction for first degree home invasion.[13]

(d) *Possession of a Firearm During the Commission of a Felony*. OCGA § 16-11-106 (b) (1)-(2) provides in relevant part: "Any person who shall have on or within arm's reach of his . . . person a firearm . . . during the commission of, or the attempt to commit . . . [a]ny crime against or involving the person of another . . . [or t]he unlawful entry into a building or vehicle. . . and which crime is a felony, commits a felony."

The evidence that Mahogany wielded a gun when he invaded Williams's home and pointed it at the four victims while robbing them was sufficient to support his convictions for possession of a firearm during the commission of a felony.[14]

(e) *Gang Act*. To convict Mahogany of violating the Gang Act, the State had to prove (1) that he was associated with G-Shine; (2) that G-Shine was a "criminal street gang," which is defined in OCGA § 16-15-3 (3) as "any organization,

_____

[13] See, e.g., *Johnson v. State*, 357 Ga. App. 565, 568 (1) (851 SE2d 175) (2020).

[14] See, e.g., *Brooks v. State*, 309 Ga. 630, 631, 633-634 (1) (b) (847 SE2d 555) (2020).

7

association, or group of three or more persons associated in fact, whether formal or informal, which engages in criminal gang activity"; (3) that he committed aggravated assault and armed robbery, which are predicate acts identified in OCGA § 16-15-3 (1) (J)[15]; and (4) that the commission of those offenses was intended to further the interests of G-Shine.[16]

Here, Corporal L. O.'s testimony and the photographs and video from Mahogany's Facebook page satisfied each of the aforementioned requirements, and therefore, the evidence was sufficient to support the Gang Act convictions.[17]

2. *Expert witness*. Mahogany contends that the trial court erred by allowing Corporal L. O. to testify as an expert witness in gang activity and to remain in the courtroom during trial. This enumeration is without merit.

(a) *Qualifications*. "A trial court has broad discretion in accepting or rejecting the qualifications of an expert. We will not disturb such rulings unless there is a

---

[15] Under OCGA § 16-15-3 (1) (J) "criminal gang activity" includes any crime involving "violence, possession of a weapon, or use of a weapon."

[16] See OCGA § 16-15-4 (a); *Overstreet v. State*, 312 Ga. 565, 574-575 (1) (b) (864 SE2d 14) (2021); *McGruder*, 303 Ga. at 591-592 (II).

[17] See, e.g., *Overstreet*, 312 Ga. 572-575 (1) (b).

8

showing that the trial court abused its discretion. A witness need not be formally educated in the field at issue to be qualified as an expert."[18]

Corporal L. O. testified that at the time of trial, he had been a criminal street gang intelligence officer for six years. He had taken several extensive gang investigation training courses throughout the country, had been a member of the Georgia Gang Investigator's Association for several years, taught several classes on gangs, instructed new hires at jails on gang trends and symbols, was a leader of the Houston County Gang Task Force, which shares intelligence on Georgia gangs, and had been consulted by local law enforcement agencies to assist with ongoing gang investigations.

Based on L. O.'s experience, his extensive training regarding gangs, and "his familiarity with their culture and symbols," we cannot say that the trial court abused its discretion by qualifying him as a gang expert.[19] "Any perceived weaknesses in his

---

[18] (Citations and punctuation omitted.) *Burgess v. State*, 292 Ga. 821, 822 (2) (742 SE2d 464) (2013).

[19] *Lopez v State*, 350 Ga. App. 662, 664 (1) (829 SE2d 862) (2019). See, e.g., *Burgess*, 292 Ga. at 822-823 (2).

9

qualifications . . . were matters of weight and credibility for the jury in evaluating his testimony."[20]

(b) *Presence in courtroom during trial*. Mahogany contends that the trial court committed reversible error when he permitted L. O. to remain in the courtroom during the trial over his objection. Nevertheless, a trial court is authorized to permit a witness, including law enforcement officers and experts, to remain in the courtroom during the trial.[21]

> Further, a violation of the sequestration rule affects only the weight and credibility of the witness' testimony, not its admissibility. Although [Mahogany] could have sought to impeach the witness' testimony based on his presence in the courtroom throughout trial, he did not do so. Therefore, he cannot now claim that he is entitled to a new trial.[22]

3. *Hearsay*.

---

[20] *Lopez*, 350 Ga. App. at 664 (1).

[21] See *Hufstetler v. State*, 274 Ga. 343, 345 (3) (553 SE2d 801) (2001), citing *Jack v. State*, 245 Ga. App. 216, 217 (2) (536 SE2d 235) (2000).

[22] (Citation and punctuation omitted.) *Jack*, 245 Ga. App. at 217 (2).

10

(a) Mahogany argues that the trial court erred by admitting Williams's hearsay testimony regarding Mahogany's Facebook posts. The record belies this assertion. Williams did not testify about Mahogany's Facebook posts in the presence of the jury.[23] Accordingly, we find no error.

(b) Mahogany argues that the trial court erred by permitting a police officer to testify as to victim Brooks's unavailability and photographic lineup identification, which testimony Mahogany contends constitutes inadmissible hearsay. This enumeration presents no basis for reversal.

Prior to trial, Mahogany moved in limine to preclude police from testifying about Brooks's identification of Mahogany from a photo line-up. The State sought to introduce the identification through police officers based on the forfeiture-by-wrongdoing exception to the hearsay rule,[24] relying on the testimony of Officer T. D.,

---

[23] In a bench conference, counsel discussed that Williams and the other victims discerned that Mahogany was one of the assailants by looking at a Facebook photo. At no point did Williams testify in the presence of the jury regarding Mahogany's Facebook posts.

[24] See OCGA § 24-8-804 (b) (5), providing that "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness" "shall not be excluded by the hearsay rule if the declarant is unavailable to testify as a witness." See also *Lopez v. State*, 355 Ga. App. 319, 320-322 (844 SE2d 195) (2020) (affirming admission of statements under the forfeiture-by-wrongdoing exception to the hearsay rule).

11

who detailed his unsuccessful efforts to locate Brooks, and Mahogony's trial testimony that Brooks told Mahogany's mother that Brooks would not be appearing in court. The trial court overruled Mahogany's objection and permitted the officers to testify regarding Brooks's identification of Mahogany.[25]

Pretermitting whether the trial court erred by admitting the hearsay testimony regarding Brooks's identification of Mahogany, "it is highly probable that the admission of [such evidence] did not contribute to the verdict in light of the overwhelming evidence of [Mahogany's] guilt," including Williams's and Scott's identification of Mahogany at trial and in a photographic lineup.[26] Accordingly, the trial court did not err by denying Mahogany's motion for new trial on this basis.[27]

4. *Resentencing*. In its response brief, the State contends that "the sentence may need to be vacated and the case remanded to correct a merger issue," alleging that the

---

[25] It appears the trial court based its ruling in part on evidence presented at or before the first trial, which ended in a mistrial, suggesting that Mahogany had his mother contact Brooks about his appearance in court.

[26] *Welch v. State*, 309 Ga. 875, 879 (2) (848 SE2d 846) (2020).

[27] See id., citing *Hendrix v. State*, 303 Ga. 525, 529 (2) (813 SE2d 339) (2018) (holding that even if trial court erred by admitting testimony pursuant to the forfeiture-by-wrongdoing exception, the error was harmless based on overwhelming evidence of guilt).

12

trial court improperly merged four counts. "[B]ecause the State did not raise the issue by cross-appeal, and because correcting this sentencing error would be to [Mahogany's] detriment, we exercise our discretion not to address it."[28]

*Judgment affirmed. McFadden, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[28] *Welch*, 309 Ga. at 880 n. 6, citing *Dixon v. State*, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017) (A merger error benefitting a defendant "implicates no liberty interest. It poses no danger of unnecessary habeas proceedings, and judicial economy is not advanced by its correction. . . . And an exercise of our discretion to correct such an error effectively penalizes the defendant for having brought his case before us. . . . For these reasons, we have determined that, when a merger error benefits a defendant and the State fails to raise it by cross-appeal, we henceforth will exercise our discretion to correct the error upon our own initiative only in exceptional circumstances. Seeing no such exceptional circumstances here, we decline to exercise our discretion to correct the erroneous merger of the [counts], and we affirm the judgment below.") (footnote omitted).