NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: September 30, 2025

S25A0709.  EVANS v. THE STATE.

BETHEL, Justice.

A jury found Gordon Evans guilty of malice murder and other crimes in connection with the shooting death of Jeffery Anderson.[1]

---

[1] The crimes occurred on November 24, 2015. On April 19, 2017, a Gwinnett County grand jury jointly indicted Evans, Durell Lewis, and Dossie Mann as parties to the crime for murder (Count 1), three counts of felony murder (Counts 2, 3, and 4), aggravated assault (Count 6), false imprisonment (Count 7), aggravated battery (Count 8), and criminal gang activity (Count 9). Evans was separately indicted for an additional count of criminal gang activity (Count 10). Lewis was separately indicted on one additional count of felony murder (Count 5) and one count of possession of a firearm by a convicted felon (Count 12). Mann was separately indicted on one count of criminal damage to property in the first degree (Count 11).

Mann and Lewis pleaded guilty to the charges against them. Their cases are not part of this appeal.

At an August 2018 jury trial, Evans was found guilty of all charges. The trial court sentenced Evans to serve life in prison without the possibility of parole on Count 1, twenty years consecutive on Count 6, ten years concurrent on Count 7, twenty years concurrent on Count 8, fifteen years concurrent on Count 9, and ten years concurrent on Count 10. The remaining counts were vacated by operation of law. See *Favors v. State*, 296 Ga. 842, 847–48 (2015). Evans filed a timely motion for new trial on August 22, 2018, which was amended through new counsel. Following a hearing in October 2024, the trial

Following the denial of his motion for new trial, Evans appeals, arguing that the trial court erred by admitting certain evidence against him. Evans also argues that trial counsel was constitutionally ineffective in two respects. Evans's claims fail, so we affirm in part. However, because we have noticed a sentencing error with respect to his aggravated assault and aggravated battery convictions, we vacate those sentences.

The evidence at trial showed that on November 24, 2015, shortly before 11:00 p.m., law enforcement officers discovered Anderson's body at his residence. He had been shot twice in the head. During the course of the investigation into Anderson's murder, investigators determined that Anderson was a Nine Trey gang member and owed money to Evans, who held a leadership position in the gang. A month before Anderson's death, Anderson's sister received text messages from Evans intended for Anderson in which Evans inquired about the money he was owed. When Anderson's

court denied Evans's amended motion on November 6, 2024. Evans then filed a timely notice of appeal, and his appeal was docketed to the April 2025 term of this Court and submitted for a decision on the briefs.

sister informed Evans that he had the wrong number, Evans replied, "[I]f you think I'm playin' wit[h] you. I'll have the last laugh."

Anderson failed to repay the money, and Evans ordered two fellow members of the Nine Trey gang—co-indictees Dossie Mann and Durell Lewis—to kill Anderson. During a custodial interview, Mann confirmed that Evans ordered Anderson's murder. Mann also indicated that he and Lewis had been to Anderson's house previously for a party and that, on the night of the murder, Lewis restrained Anderson and attempted to drown him.[2] When that effort failed, Anderson offered the men cocaine but then attempted to flee. According to Mann, he shot at Anderson and missed, and Lewis then shot Anderson in the head. Mann indicated that, on the night of the crimes, he carried a .40-caliber gun and Lewis a .357-caliber gun. Shell casings and bullets located at the scene were determined to have been fired by a .40-caliber firearm and a .357-, .38-, or .41-caliber firearm.

---

[2] When Anderson's body was discovered, investigators also found a bathtub filled with water in the house.

Investigators determined that the last call to Anderson's phone was placed from Lewis's cell phone, and cell phone records placed Lewis's cell phone in the vicinity of Anderson's home the night of the crimes. Data from a door entry system indicated that the front door of Anderson's residence was opened shortly after Lewis called Anderson. And phone records indicated that Lewis placed a call to Evans roughly 20 minutes later.

Police interviewed Evans, and he claimed he "knew of" Lewis and denied knowing Mann. However, phone records indicated that, shortly after the interview with police, Evans called Lewis and Mann called Evans, and Evans admitted as much at trial. Lewis did not answer, but records from a wiretapped conversation shortly after the interview with police showed that Evans discussed the investigation with Mann and what to tell investigators. Evans also confirmed with Mann that the guns had been disposed of. And records from a wiretapped conversation showed that Evans called Lewis a few days before Evans's interview with police to discuss the investigation into the case and advised Lewis to leave the state.

4

Phone records also showed Lewis's and Evans's phones communicating around the time of the murder, and Evans admitted at trial that Lewis called him that same evening.

Evans later discovered that Mann had spoken to police and reportedly wanted Mann to recant his statements, but Mann refused. Evans then ordered another incarcerated gang member, Jermaine Lawrence, to kill Mann to keep him from testifying and to kill Mann's mother or his brother upon Lawrence's release from prison. Lawrence ultimately refused Evans's order and, at Evans's behest, was subsequently attacked, suffering serious injuries.

Evans testified in his own defense at trial. He denied ordering Lewis and Mann to kill Anderson, claiming that he found out about the murder after the fact and let other gang members believe that he was responsible to build up his reputation. Evans claimed that he spoke with Mann only afterwards to warn him about the investigation. Evans also denied ordering hits on other gang members.

1. Evans first argues that the trial court erred by denying his

5

pretrial motion in limine to exclude a handwritten letter found in his prison locker. The letter, which was written by another incarcerated gang member, Anthony Bostick, was addressed to "Big Homie" and also identified the recipient as "QB," was introduced by the State for the limited purpose of proving Evans's identity as "QB" and as having a leadership position in the gang as a "Big Homie." On appeal, Evans contends, as he did in the trial court, that the letter was admitted in violation of his Sixth Amendment right to confront his accuser under the United States Constitution and that its contents amounted to inadmissible hearsay. These arguments fail.

Turning first to the Confrontation Clause issue, we have explained that "[a] Confrontation Clause violation occurs when an out-of-court statement admitted into evidence is testimonial in nature and the declarant is unavailable at trial and was not previously subject to cross-examination." *Lynn v. State*, 310 Ga. 608, 614 (2020) (punctuation omitted). But here, even assuming the letter was testimonial in nature, the author of the letter, Bostick,

6

testified at trial, and Evans cross-examined him. As such, the admission of the letter did not violate the Confrontation Clause. See *Munn v. State*, 313 Ga. 716, 725 (2022) (no Confrontation Clause violation where declarants testified at trial and were subject to cross-examination).

Having concluded that Evans failed to establish a Confrontation Clause violation, we turn to his argument that the letter should nevertheless have been excluded as inadmissible hearsay. Assuming without deciding that the letter should have been excluded on this basis, we conclude that any error in admitting the letter and testimony about it was harmless. "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." *Kingdom v. State*, 321 Ga. 363, 367 (2025) (citation and punctuation omitted) (assuming that evidence at issue constituted hearsay and assessing for nonconstitutional harmless error). Here, there was a substantial amount of other evidence establishing Evans's identity as "QB" and his leadership position in the gang as a "Big Homie," including

7

Evans's own testimony. The letter was therefore cumulative of other properly admitted evidence, and we conclude that any error in the admission of the letter did not affect the outcome of the trial. See *Wright v. State*, 291 Ga. 869, 872 (2012) (erroneous admission of hearsay evidence is harmless where evidence is merely cumulative of other properly admitted evidence). Accordingly, this enumeration of error fails.

2. Evans next argues that the trial court erred by admitting the testimony of a handwriting expert, asserting that the expert did not possess the requisite skill or training to be qualified as an expert and that her testimony otherwise failed to satisfy the standard for admissibility.[3] However, pretermitting whether the trial court erred by admitting this testimony, we conclude that any error was

---

[3] Evans asserts in his appellate brief that the expert's testimony failed to meet the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 US 579 (1993). With the 2022 legislative amendment to OCGA § 24-7-702, which became effective on July 1, 2022, the General Assembly has extended to criminal cases the federal standard of admissibility of expert testimony articulated in *Daubert* and its progeny. See *Reddick*, 321 Ga. at 84 n.6. But Evans's trial occurred in 2018, at which time the standard of admissibility of expert testimony articulated in *Harper v. State*, 249 Ga. 519, 525 (1982), was applicable in criminal cases. See *Reddick v. State*, 321 Ga. 73, 84 n.6 (2025).

8

harmless.

At trial, the expert testified that she conducted a handwriting analysis to determine whether Evans wrote certain entries listing details about the Nine Trey gang on a notepad that was found in his jail cell locker. However, Evans acknowledged during his own testimony at trial that he was a leader of the gang, and when asked about the notepad found in his cell, he did not disclaim authorship but rather explained that it included a roster of gang members and details pertaining to gang dues. Moreover, multiple witnesses testified to Evans's position as a gang leader at trial. Accordingly, the expert's testimony ultimately was cumulative of other properly admitted evidence and therefore harmless. See *Mack v. State*, S25A0773, slip op. at 11–12 (Ga. Aug. 26, 2025) (2025 WL 2444626) (even assuming that certain expert testimony was improperly admitted, evidence "was cumulative of [the witness's] unchallenged expert testimony" and therefore harmless).

3. In his final claims of trial court error, Evans argues that the trial court abused its discretion by allowing the State to introduce

9

into evidence Mann's videotaped interview with investigators, asserting that the video constituted hearsay and that it was admitted in violation of his Confrontation Clause rights under the Sixth Amendment of the United States Constitution. We disagree.

The State filed, and the trial court ultimately granted, a motion to admit Mann's interview pursuant to the doctrine of forfeiture by wrongdoing. Under this doctrine, "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." *Davis v. Washington*, 547 US 813, 833 (2006). This doctrine has also been codified in our current Evidence Code as a hearsay exception under OCGA § 24-8-804(b)(5) ("The following shall not be excluded by the hearsay rule if the declarant is unavailable as a witness: … A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness."). See *Hickman v. State*, 299 Ga. 267, 272 (2016). "To admit a statement against a defendant under the rule of forfeiture-by-wrongdoing, the government must show (1) that the defendant engaged or acquiesced

in wrongdoing, (2) that the wrongdoing was intended to procure the declarant's unavailability, and (3) that the wrongdoing did procure the unavailability." *Hendrix v. State*, 303 Ga. 525, 528 (2018) (citation and punctuation omitted). If a trial court finds by a preponderance of the evidence "that a party has acted with the purpose of making a witness unavailable to testify against him, a trial court does not abuse its discretion in allowing the unavailable witness's statements to be admissible at trial against the party who caused the witness's absence." Id.

Here, the State presented evidence supporting all three factors. The State presented testimony that Evans ordered another gang member to kill Mann and his family to keep him from testifying, supporting the first and second factors. And after Mann refused to testify at trial, the State called an investigator who testified that Mann's refusal arose from his belief that he would be hurt in prison for testifying against Evans, supporting the third factor. Accordingly, the trial court did not abuse its discretion when it determined that the preponderance of the evidence showed that

11

Evans engaged in wrongdoing that was intended to and actually caused Mann's unavailability. See *Hendrix*, 303 Ga. at 529 (appellant intimidated witness and thereby prevented her from testifying where witness indicated that she feared that she would be killed if she did so). Accordingly, Evans's claims of error fail.

4. Evans next argues that trial counsel rendered ineffective assistance at trial by (1) failing to object to certain testimony and (2) failing to conduct pretrial discovery. We conclude that Evans has not shown that counsel performed deficiently in either regard.

To prevail on his claim of ineffective assistance, Evans must show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced his defense. See *Strickland v. Washington*, 466 US 668, 687 (1984).

> To show deficient performance, the defendant must demonstrate that counsel performed counsel's duties in an objectively unreasonable way, considering all of the circumstances and in the light of prevailing professional norms. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.

12

*Payne v. State*, S25A0883, slip op. at 12–13 (Ga. Aug. 26, 2025) (2025 WL 2445309) (citations and punctuation omitted). And "[i]f a defendant fails to establish one of these two prongs, we need not examine the other." Id. at 12.

(a) Evans first argues that counsel performed deficiently by failing to object on the basis of hearsay and "harmful character evidence" to the testimony of the investigator who said that Mann would not testify for fear of being hurt in prison, that the District Attorney had offered to move Mann to another prison for his protection, and that Mann pleaded guilty to murder in connection with Anderson's death. It is well settled that "whether to raise a specific objection" is "ordinarily" a matter of trial strategy, and where "reasonable," such strategic decisions "provide no ground for reversal." *Williams v. State*, 302 Ga. 474, 486 (2017) (citation and punctuation omitted). And our review of the record reflects that counsel's decision not to object to the investigator's testimony about Mann was part of a reasonable trial strategy.

We note at the outset that evidence that Mann had refused to

testify due to fear of retribution was admissible. See *Palmer v. State*, 303 Ga. 810, 816 (2018) ("Evidence of a defendant's attempt to influence or intimidate a witness can serve as circumstantial evidence of guilt." (citation and punctuation omitted)). And, as we explained above in Division 3, evidence of his refusal was admissible as a hearsay exception under OCGA § 24-8-804(b)(5). Therefore, any objection to that portion of the investigator's testimony would have been meritless. See *Moss v. State*, 298 Ga. 613, 617 (2016) ("The failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel." (citation and punctuation omitted)). Moreover, at the hearing on the motion for new trial, counsel testified that when the evidence of Mann's guilty plea was admitted, she opted to use that evidence to advance the defense theory that Mann and Lewis committed the murder independently and without direction from Evans. This testimony makes clear that counsel made the strategic decision not to object. And "[a] defendant who contends a strategic decision constitutes deficient performance must show that no competent attorney, under

similar circumstances, would have made it." *Gittens v. State*, 307 Ga. 841, 847 (2020) (citation and punctuation omitted). Evans has not attempted to make such a showing here, and, of course, "[t]he fact that present counsel would pursue a different strategy does not render trial counsel's strategy unreasonable. Effectiveness of trial counsel is not judged by hindsight or result." *Walker v. State*, 294 Ga. 752, 757 (2014) (citation and punctuation omitted). Given these circumstances, Evans has failed to show that counsel was constitutionally deficient for failing to object to the challenged testimony, and this claim fails. See *Palmer*, 303 Ga. at 816–17.

(b) Evans also argues that trial counsel rendered ineffective assistance in connection with her decision to call a witness to support Evans's theory of defense because that witness's testimony ultimately was unfavorable to the defense. Specifically, Evans asserts that trial counsel performed deficiently by failing "to adequately interview" the witness and by failing to review a recording of the witness's statement to police that the State asserted was turned over to Evans's counsel during pretrial discovery. Of

15

course, an attorney's decision about which defense witnesses to call is a classic matter of trial strategy and will not form the basis for an ineffectiveness claim "unless it is so unreasonable that no competent attorney would have made th[at] decision under the circumstances." *Sullivan v. State*, 308 Ga. 508, 511 (2020) (citation and punctuation omitted). Evans has failed to meet his burden of demonstrating that counsel's decision here was unreasonable.

As an initial matter, trial counsel's testimony at the motion for new trial hearing indicates that Evans himself requested that the witness be called to testify in his defense, with counsel testifying that Evans "had significant influence" on the decision to call the witness and that Evans wrote "a three-page direct examination" that counsel incorporated into her direct examination. Counsel also testified that she and her private investigator conducted a nearly two-hour interview with the defense witness before trial and that she then had a similarly lengthy consultation with Evans about whether to call the witness. And although trial counsel said at the hearing on the motion for new trial that she would not have called

16

this witness had she been aware of a recording of the witness's statement, she denied that the recording was produced during pretrial discovery, testifying that she "reviewed every item that [she] was served during this case and [the recorded statement] was not in the discovery that [she] was provided." In rejecting Evans's various ineffective assistance of counsel claims, the trial court generally found counsel's testimony to be credible, and we cannot say that counsel's decision to call the witness to testify at trial was so unreasonable that no competent attorney would have made that decision, and Evans has not shown otherwise.[4] Indeed, he offers

---

[4] As Evans acknowledges in his brief, trial counsel ultimately moved for a mistrial on the basis that the witness testified on cross-examination about statements he made during a second interview with investigators and information about that second interview "was not revealed to" counsel as part of reciprocal discovery. In making that motion, counsel noted that she "probably would not have called" the witness if she had been aware of the witness's statements made during the second interview. The prosecutor responded that the recording of the second interview was produced as part of reciprocal discovery but argued that, because the State did not call the witness as part of its case in chief, he was "not required to" turn over notes from the interview and Evans was "not entitled to it." The trial court denied the motion for mistrial without elaboration

On appeal, Evans relies on counsel's statements during this motion to support his claim of ineffective assistance, arguing that this Court must find that counsel's decision to call the witness was unreasonable unless we "find[ ] that the [trial court] erred [by denying the motion for mistrial] and that the

17

nothing more than speculation as to what additional time spent interviewing the witness might have uncovered, and he has made no effort to demonstrate that the recording in fact was available for counsel to review.[5] See *Gittens*, 307 Ga. at 844 ("Unfounded speculation about what additional investigation might have uncovered … cannot support a claim that trial counsel was professionally deficient, nor can it establish prejudice."); *Ruffin v. State*, 283 Ga. 87, 91 (2008) (trial counsel cannot be held ineffective for failing to locate or review evidence not brought to her attention).

---

State did in fact commit prosecutorial misconduct by failing to turn over required discovery[.]"But Evans has not enumerated as error either that the trial court erred by denying his motion for mistrial or that the State committed prosecutorial misconduct, nor has he offered any argument in support of those claims. As such, we express no opinion on them. See *Williams v. State*, 306 Ga. 365, 366 (2019) ("Matters not enumerated as error will not be considered on appeal." (citation and punctuation omitted)).

[5] To the extent Evans argues that we should presume from this record that the recording was available for counsel's review, he is incorrect. Evans bears the burden of showing deficient performance and prejudice through "competent evidence," and "a silent or ambiguous record is not sufficient to overcome the strong presumption of reasonable performance." *Thorpe v. State*, 304 Ga. 266, 268 (2018) (citation and punctuation omitted). Taking into account both the prosecutor's statements detailed in footnote 4 and trial counsel's testimony detailed above about whether the evidence at issue was produced as part of reciprocal discovery, the record is, at best, ambiguous as to whether the evidence was even available for counsel's review before trial, and the trial court does not appear to have specifically resolved this factual question.

Accordingly, this claim, like the others, fails.

5. Finally, while there is no error with respect to Evans's trial, we do identify an error with respect to his sentencing. As discussed in footnote 1, in addition to sentencing Evans for the murder of Anderson (Count 1), the trial court also sentenced Evans for the aggravated assault of Anderson with a firearm (Count 6), and aggravated battery of Anderson for shooting him in the head with a firearm (Count 8). But both of these counts should have merged into Count 1. See *Douglas v. State*, 303 Ga. 178, 183 (2018) (aggravated battery and aggravated assault counts should have merged because the "injuries were sustained by one victim during a single, uninterrupted criminal act").

"To determine whether one crime is included in another, and therefore merges as a matter of fact, the court must assess whether conviction for one of the offenses is established by proof of the same or less than all of the facts required to establish the other crime." *Sullivan v. State*, 301 Ga. 37, 43 (2017) (citation and punctuation omitted). And here, the elements required to prove Evans, as a party

to the crime, had committed the aggravated assault and aggravated battery were among the elements required to establish that he had committed the murder of the same victim. See id. Consequently, we vacate the sentences imposed for Counts 6 and 8.

*Judgment affirmed in part and vacated in part. All the Justices concur.*